JESS ROWLAND v. STATE.

No. A-10047.   Sept. 23, 1942.

(129 P. 2d 609.)

Wm. D. French and Cornelius Hardy, both of Tishomingo, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Jess Rowland, was charged by information filed in the district court of Johnston county with the crime of larceny of domestic animals,

was tried, convicted and sentenced to serve four years in the State Penitentiary, and has appealed.

It is first contended that the court erred in overruling the motion to quash the information for the reason that no proper transcript showing a preliminary trial for the defendant, or that he had waived a preliminary trial and been ordered held to await the action of the district court, had ever been filed in said proceedings.

Evidence was taken at the time of the presentation of this motion and it was disclosed that the defndant and two other persons jointly charged with him were personally present on October 16, 1939, and that all three of the accused persons, including the defendant, waived a preliminary hearing and were bound over to the district court. On the back of the complaint appears the following:

"It appearing to me that the offense set forth in the foregoing complaint, to-wit: Larceny of Domestic Animals has been committed and there is sufficient and probable cause to believe the said Jess Rowland guilty thereof, I hereby order that he be held to answer said charge in the district court of Johnston County, Oklahoma, and that I hereby fix his appearance bond at the sum of $1,000.00."

The alleged error complained of is the failure of the justice of the peace to sign this order binding the defendant over to await trial in district court in compliance with sections 2806 and 2812, O. S. 1931, 22 O. S. 1941 § 264, 276.

It is well settled by many decisions of this court that where one is charged in the district court by information and desires to raise the question of not having had a preliminary examination or question a defect in the transcript of the justice of the peace, this should be done by a motion to quash the information presented before any plea is made to the information. It is likewise well settled that where a defendant voluntarily enters a plea of guilty or

enters a plea of not guilty and goes to trial, he waives any right he may have had to question the fact that he did not have a preliminary examination or that the transcript filed by the justice of the peace is insufficient. Sparks v. State, 71 Okla. Cr. 430, 112 P.2d 434; Williams v. State, 6 Okla. Cr. 373, 118 P. 1006.

When such a question is raised, a question of fact is presented to the trial court as to whether there was a preliminary examination or a waiver thereof and a judicial determination by the examining magistrate that a felony has been committed and that there is probable cause to believe that defendant is guilty thereof. If the district court, after a hearing, makes a finding on these questions and further finds that all proceednigs before the magistrate were regular but that the transcript filed by the justice of the peace fails to satisfactorily show the conditions procedent to the institution of an action in the district court, he should allow the justice of the peace to correct such transcript so as to speak the truth.

In the case of Looper v. State, 42 Okla. Cr. 341, 276 P. 503, it is held:

"The failure of the committing magistrate to indorse his findings and order in the first instance on the preliminary complaint is not jurisdictional, and, where the proper order has been made and entered on his docket and is shown by the transcript transmitted to the district court, that in itself is sufficient to show jurisdiction".

In Newcomb v. State, 23 Okla. Cr. 172, 213 P. 900, it is stated:

"Upon motion to set aside the information on the ground that the examining magistrate had not held the defendant to answer the charge, the trial court may permit such magistrate to correct his indorsement on the preliminary information filed with the court clerk to speak the truth and to rectify an apparent clerical error."

In the instant case there is no dispute that the defendant actually appeared and waived a preliminary examination and was held to await the action of the district court and that an order was made reciting such facts. Under such circumstances the trial court did not err in allowing the justice of the peace to place his signature on said order when the question was raised in the district court.

It is next contended that the court erred in permitting the county attorney, over the objection of the defendant, to amend the information by changing the date of the alleged commission of the offense from the 16th day of October, 1939, which was three days after the filing of the information, to the 16th day of August, 1939.

The preliminary complaint filed against the defendant alleged that the crime was committed on August 16, 1939. The information was filed on October 13, 1939, and it is apparent that the insertion of the date October 16, 1939, in the information, which is an impossible date, was purely a clerical error.

In the recent case of Ex parte Williams, 70 Okla. Cr. 377, 106 P.2d 524, this court held:

"Where the indictment, as presented by the grand jury, gives the date of the alleged offense as subsequent to the presentment and filing of the indictment, the insertion of said date will be considered a clerical error; and the county attorney, with permission of the court, may amend the indictment by showing the true date of the alleged offense."

If such a ruling is applicable to an indictment, which is presented and filed by a grand jury, then surely the same rule of law would apply to an information, which is prepared and filed by a county attorney.

It is next insisted that the court erred in allowing

Rena Rowland to testify as a witness on behalf of the state over the objection of the defendant as to her competency, for the reason that the said Rena Rowland was the wife of defendant.

When this objection was interposed at the time this witness was called to testify, the jury was excused and a hearing was had out of the presence of the jury. Rena Rowland testified that she had formerly been the wife of the defendant but that they had been divorced for about two years and that she was no longer his wife. She denied having cohabited with him as man and wife or of having held herself out to the public as his wife since the rendition of the divorce. She admitted having come to the home of defendant, where defendant and children of the witness were living, for the purpose of visiting with her children.

Two of the children testified that when she came to their home she slept with defendant and cooked the meals the same as she had formerly done before the divorce was granted. The defendant did not testify on this controverted point. After the hearing was completed the court allowed the witness to testify.

It is the contention of defendant that after the parties were divorced a common-law marriage was entered into between them. Common-law marriages are recognized in the state of Oklahoma. Hughes v. Kano, 68 Okla. 203, 173 P. 447; Baker v. Jack, 112 Okla. 142, 241 P. 478; In re Love's Estate, 42 Okla. 478, 142 P. 305, L.R.A.1915E, 109. However, in all of the above cases it is settled that before a common-law marriage may exist, there must be a mutual agreement between the parties in praesenti to be a mutual come husband and wife, and, pursuant to such contract, enter into and thereafter maintain a marriage relationship.

The witness testified specifically that there was no marriage relationship between herself and defendant after

the divorce was granted, and that there was no marriage contract entered into between them. The defendant remained silent on this question. Under such a state of facts, the court did not err in allowing this witness to testify. She may have cohabitated with her former husband, as related by the children, but a meretricious relationship without a mutual agreement to be man and wife will not support the contention of defendant's counsel that their's was a common-law marriage. In Nichols v. State, 50 Okla. Cr. 409, 298 P. 886, 887, it is stated:

"A woman called by the state as a witness against her codefendant charged with the crime of murder is not incompetent to testify against such codefendant, even though she may have cohabited with the defendant, where the evidence shows there was no agreement to marry and no marriage, either common-law or ceremonial.

"The burden of proof of incompetency of a witness rests upon one who raises such question."

Lastly, it is contended that the court erred in instructing the jury that the witnesses for the state, Raymond Claud Hulsey and Plez Rowland, were accomplices of the defendant, and the further contention is made that if they were such accomplices the evidence was insufficient as a matter of law to corroborate their testimony and sustain a conviction of defendant.

The instruction complained of reads as follows:

"In this case, Gentlemen of the Jury, the State relies upon the testimony of Claud Hulsey and Plez Rowland, together with other facts and circumstances in evidence, to establish the fact of the taking of the cattle in question, and the connection of the defendant, Jess Rowland, therewith. In this connection you are instructed that the testimony of the said Claud Hulsey and Plez Rowland show them to be accomplices, and before you will be authorized to convict the defendant upon the testimony of accomplices you must be satisfied

that the testimony of such accomplices has been corroborated by such other evidence as tends to connect the defendant with the commission of the offense charged, and such other evidence is insufficient in corroboration if it merely shows the commission of the offense or the circumstances thereof."

This instruction is a clear and correct statement of the law applicable to the facts shown by the record and is such an instruction as we have approved many times in similar cases. Waldrep v. State 74 Okla. Cr. 428, 127 P. 2d 860; Lizar v. State, 74 Okla. Cr. 368; 126 P. 2d 552; Mills v. State, 73 Okla. Cr. 98, 118 P. 2d 259; Hathcoat v. State, 71 Okla. Cr. 5, 107 P. 2d 825; Moody v. State, 13 Okla. Cr. 327, 164 P. 676; Hewett v. State, 38 Okla. Cr. 105, 259 P. 144; Hensen v. State, 69 Okla. Cr. 273, 101 P. 2d 1060. In Henson v. State, supra, it is stated:

"Evidence corroborative of an accomplice need not directly connect the defendant with the commission of the crime; it is sufficient if it tends to connect him with its commission.

"Evidence corroborating an accomplice and tending to connect the defendant with the commission of the crime need not be direct, but may be circumstantial only.

"It is not essential that the corroborating evidence shall cover every material point testified to by the accomplice or be sufficient alone to warrant a verdict of guilty. If the accomplice is corroborated as to one material fact or facts by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all. Such corroborating evidence, however, must show more than the mere commission of the offense or circumstances thereof."

In addition to instruction No. 6, the court further instructed the jury as follows:

"You are told, Gentlemen of the Jury, that an accomplice is one culpably implicated in the commission of a crime of which the defendant is accused, in other words

an associate, one who knowingly and voluntarily cooperates or aids or assists in the commission of the crime. He is one with criminal intent, acts with others and participates in the commission of a crime. In this connection you are told that mere knowledge that a crime has been committed and concealment of such knowledge, does not make one an accomplice, unless he aided or participated in the offense. He is not made an accomplice by mere concealed knowledge of crime, and the mere presence at, acquiescence in or silent consent to the commission of an offense, is not, in absence of duty to act, sufficient to make a person an accomplice. Therefore you are told that if you find that other witnesses, not mentioned in these instructions, were accomplices in the crime that was committed, if you find that a crime was committed, then and in that event the testimony of such other accomplices must be corroborated by other evidence as tends to connect the defendant with the commission of the offense charged, as more fully set out in paragraph six of these instructions, before you would be authorized to return a verdict of guilty in this case.

"You are further told, Gentlemen of the Jury, that one accomplice cannot corroborate another accomplice, but the corroboration must be testimony independent of that of the accomplices."

In applying the above rules to the evidence herein to determine whether there is sufficient evidence corroborative of the accomplices, we find the following facts proved, in addition to other circumstances which tended to corroborate the testimony of the accomplices:

The two accomplices testified in detail concerning the agreement to steal the cattle, the trip by the three parties, including the defendant, to the premises where the cattle were stolen, the driving of the cattle to the defendant's lot where they were loaded into defendant's truck, transported to Oklahoma City and sold and the money divided. Rena Rowland, ex-wife of defendant, and

Mrs. Plez Rowland, the wife of one of the accomplices, each testified to being present at the Jess Rowland house and of overhearing a conversation between Jess Rowland, Hulsey and Plez Rowland wherein the defendant suggested that they could make some easy money by stealing cattle. They further testified to the three parties leaving the Jess Rowland place to go and steal the cattle, and Rena Rowland testified that the cattle were brought back by Jess Rowland and the other two parties to the Jess Rowland place after dark and were loaded into Jess Rowland's truck and that Jess Rowland said at that time that they were going to the city to sell them. That after the defendant returned from Oklahoma City he told Rena Rowland that the cattle had brought $66.

The testimony of these two witnesses was sufficient to corroborate the testimony of the accomplices, but, in addition, we have certain conversations between the defendant and the accomplices while they were in jail which were overheard by an officer, which while standing by themselves, would not have been sufficient to corroborate the testimony of the accomplices, but were strong circumstances to be considered along with the other testimony.

Also, we have the testimony of the man from whom the cattle were stolen and the officers who tracked the cattle from the lot where they were stolen across several pastures to where they were loaded at the highway in front of the defendant's house. The officers testified that in making their investigation they found the pick-up truck of defendant hidden in the woods and that it showed evidence of having had cattle in it recently.

The defendant did not testify and no proof was offered in his behalf.

We have carefully examined the record and have not found any errors other than such minor errors as

174

generally creep into the trial of a criminal case, but which are not of material importance and are insufficient to justify a reversal of the judgment of conviction.

The judgment of the district court of Johnston county is therefore affirmed.

BAREFOOT, P. J., and DOYLE, J., concur.