## LAWRENCE ANDERSON v. STATE.

No. A-10309. Nov. 15, 1944.

(153 P. 2d 245.)

Utterback & Utterback, of Durant, and F. L. Welch, of Antlers, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Marx Childers, Co. Atty., of Antlers, for defendant in error.

BAREFOOT, J.   Defendant, Lawrence Anderson, was charged in the district court of Pushmataha county with the crime of larceny of livestock, towit, one red cow; was tried, convicted, sentenced to serve a term of ten years in the penitentiary, and has appealed.

For a reversal of this case, defendant lists four assignments of error, as follows:

"(1) Overruling motion and supplemental motion for new trial.

"(2) Verdict and judgment of the court are not sustained by the evidence or the law.

"(3) Error of the court in refusing to grant the motion of the defendant for instructed verdict, which was made at the close of the introduction of the evidence by the state.

"(4) Error of the court in refusing to grant the motion of the defendant to instruct the jury to return a verdict of acquittal at the close of all the evidence."

All of these alleged errors may be considered together.

It is urgently contended that the evidence is insufficient to sustain the judgment and sentence, for the reason that it is based entirely upon the evidence of an accomplice, and that his testimony is not corroborated as required by the statutes and the laws of this state.

A proper consideration of this issue necessitates a short review of the evidence and the law applicable.

The statute with reference to the necessity of corroboration of an accomplice is 22 O. S. 1941 § 742, which is as follows:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

This statute has been before this court for construction in so many cases we shall not attempt to review them, but cite a few where the facts are somewhat similar to those here involved: Martin v. State, 12 Okla. Cr. 510, 159 P. 940; Jones v. State, 10 Okla. Cr. 216, 136 P. 182, 137 P. 121; Smith v. State, 40 Okla. Cr. 88, 267 P. 283; Gourley v. State, 49 Okla. Cr. 24, 292 P. 873; Davis v. State, 18 Okla. Cr. 453, 196 P. 146; Brewer v. State, 63 Okla. Cr.

389, 75 P. 2d 901; Teague v. State, 64 Okla. Cr. 369, 81 P. 2d 331; Plaxico v. State, 78 Okla. Cr. 353, 148 P. 2d 201.

The facts in this case, as testified to by Harold Harris, the admitted accomplice, were that in the summer of 1940 he was a resident of Pushmataha county, residing north of Rattan. That Ray Benningfield lived near him. That during the summer he was riding with the defendant in his pick-up truck between Antlers and Rattan, and that defendant "asked me did I reckon we could steal some cows and get by with it." And that defendant further stated: "I know where some pretty good deals are, we might steal them and get by with it." That defendant mentioned the names of parties who owned cattle and that he knew the managers of some of the ranches where he might pay off and get by with it. That defendant told the witness that if he and Ray Benningfield would get up the cattle and let him know, he would haul them in his truck, take half the money and give them the other half. Harris testified that he put the proposition up to Benningfield, who agreed to help him, and they were to divide the money they received equally.

In pursuance of this agreement, he testified to the taking of four truckloads of stolen cattle to the stock market at Fort Worth, Tex., all hauled in defendant's pick-up truck. The records introduced in evidence showed these truckloads were received and sold at Fort Worth as follows:

Aug. 22, 1940, L. Anderson, 1 bull.
Aug. 22, 1940, Harold Harris, 4 head.
Aug. 28, 1940, L. A. Anderson, 8 head.
Sept. 3, 1940, H. Harris, 5 head.
Sept. 17, 1940, H. Harris, 8 head.

All of these shipments were sold in the name of Harold Harris, with the exception of one bull in the first load, which was the individual property of the defendant and was sold in his name; and the shipment of August 28, 1940.

When the first load was taken to Fort Worth, it consisted of one bull, the individual property of the defendant, two heifers, one cow, and one calf. One heifer was the individual property of the witness, and the other three had been stolen by the witness and Benningfield. Defendant came in his truck to a place near where the witness Harris lived and hauled the cattle to Fort Worth. Defendant, Anderson, according to the witness, accompanied the shipment in person. He testified that the defendant got about $72 out of the proceeds of the sale of the five head of cattle—all that the bull brought, one-half of the price of the three cows that were stolen, and witness paid him $10 on his individual heifer. He testified that this money was divided in Fort Worth.

The record shows that one shipment was sold in Fort Worth on August 28, 1940; that it consisted of eight head of cattle, sold in the name of L. A. Anderson, and that the net proceeds were $182.31. The witness Harris got the check for this shipment, and the defendant's brother got it cashed in Forth Worth, and it was divided in the truck between Denton and Forth Worth, the defendant taking one-half and the witness and Ray Benningfield taking one-fourth each. Another shipment contained eight head. They were sold in Fort Worth on September 17, 1940, for the sum of $220.88, in the name of H. Harris.

As to the load containing the "one red cow, the property of Ben Johnson," described in the information, the witness testified that there were five head in the truck,

all of them having been stolen. He testified that he did not go to Fort Worth with this load, but that defendant took them, and that a few days thereafter he saw the defendant in Antlers, and that defendant gave him a check for $84.92, on the First National Bank of Antlers, for his one-half of the proceeds of this shipment. That he cashed the check, and gave one-half of the proceeds to Ray Benningfield.

It may here be mentioned that the state introduced in evidence the check of the Shirley Commission Company of Fort Worth, payable to H. Harris, for $164.85, the proceeds of the shipment containing the cow which accused is charged with stealing, less $5 cash drawn by the defendant as shown by the sale sheet. This check was deposited in the First National Bank of Antlers to the credit of L. & P. Anderson (defendant and his wife) on September 4, 1940, the day after the sale, as shown by the check and the commission records. Evidence was introduced of a debit item against the account of defendant in the sum of $84.92 on September 5, 1940. The check to the witness Harris, given by the defendant, was not introduced in evidence. The witness denied endorsing the check of the Commission Company, which bore his endorsement. This was one of the issues passed upon by the jury. Admitted signatures of the witness were introduced, and from an examination of them, we are of the opinion that the jury was justified in concluding that he had endorsed the check. The same applies to the signature of defendant. The cashier of the First National Bank of Antlers testified that in his opinion it was defendant's signature. It will be noted that the charge against defendant's account in the bank, on September 5, 1940, is exactly one-half of the proceeds of the five cattle sold in the shipment.

The witness Harris also testified that shortly after the fourth shipment he saw defendant, who told him things

were getting pretty hot, and that they were trying to catch up with them. That witness told defendant he had already quit, that he and Benningfield had talked it over as they went home and agreed to quit. That no more cattle were stolen by them.

This witness also testified that during the time he was stealing the cattle the defendant had furnished him a horse to ride. The defendant offered a number of witnesses with reference to the reason the horse was left with defendant. This question was not very material to the real issue involved.

The state offered in evidence a representative of the Texas Cattlemen's Association of Fort Worth, Tex., who testified to the receipt of the cattle, and to the brands thereon. There was no issue as to this. Also the book-keeper of the Shirley Commission Company, of Fort Worth, by whom the cattle were sold, and who issued the checks for the proceeds; together with the checks, and the account sales.

The sheriff of Pushmataha county testified to going to Fort Worth to make an investigation, and of defendant requesting that he be permitted to accompany him, which was done. That he later left Fort Worth and went to some other place to transact some business, and defendant told him he would return home. He testified of returning home and to charges being filed by the county attorney against defendant; of his search for defendant, and of locating him in El Paso, Tex. Defendant showed by his wife, who had obtained a divorce from him, that there had been family trouble prior to his leaving, and that this was the reason for his being away from home.

It is upon the above evidence that defendant contends there was no corroboration of the accomplice's testimony, and the state contends there was.

When the state had rested, the court, after a hearing upon the demurrer, permitted the state to re-open its case and put on further testimony with reference to the deposit in the First National Bank of Antlers of the check for $164.85, and also with reference to the signatures of defendant and the witness Harris, as above outlined. The demurrer to the evidence was then overruled.

The court stated at the time of overruling the motion for new trial, which was the same day the verdict was returned:

"Well, I feel as I did, I think now that there is in the record sufficient corroboration—there wasn't any corroboration at all until the last witness and this man from Fort Worth testified, I forget his name, but as I view the testimony that corroborates the accomplice's testimony. The evidence is that on the 3rd day of September, 1940, the stolen cow was sold in Fort Worth and on that date a check was issued for the stolen cow to the accomplice, and on the following day, the 4th day of September, the check was deposited to the credit of the defendant at the bank here at Antlers. It is undisputed that it is his, the defendant's endorsement there on the check for the stolen cow, and that he got the proceeds from the stolen cow, there is testimony that the next day there is a debit in the account of the defendant for exactly one-half, lacking one-half a cent, of the proceeds of the stolen cow. Now I believe that that testimony is sufficient, to tend to connect the defendant to the commission of the crime. As I understand the law, all that is necessary is testimony that tends to connect the defendant. I believe that the evidence tends to connect him with it. On the grounds that there was incompetent evidence, I don't think there is any merit in that and there were no objections to the instructions."

In consideration of this evidence it may be stated that Ray Benningfield was used as a witness by the defendant and he denied in toto the evidence of the witness Harris.

He denied assisting in the stealing of any cattle, receiving the proceeds and the division of any money between himself and the witness Harris. He further testified that during the trial of the case he had talked with Harris and that Harris had told him: "I want to see you get out of this, I am your friend, and haven't got anything against you. Anderson double-crossed me, I want to try to stick him. Marx (the county attorney) told me to get up and testify against you and Anderson, that they wouldn't prosecute you." The witness Harris denied this conversation.

The record further reveals that the witness Harris had entered a plea of guilty to the larceny of the cow described in the information, and had received a sentence of three years in the penitentiary. He had been held as a witness, and had never gone to the penitentiary. On a supplemental motion for new trial, it was shown that the witness Harris was re-sentenced, and the sentence was suspended, and he had been discharged.

Under the record as above stated, the only issue for this court to decide is, Was the evidence of the witness Harris sufficiently corroborated under the law to permit this judgment to stand?

It is not for us to say that we would have done had we been jurors and heard the whole of the evidence, as presented by the record. As the trial court stated, the whole question hinges upon the testimony with reference to the depositing in the First National Bank of Antlers of the check for $164.85 on September 4, 1940, the amount of which was exactly that of the proceeds of the shipment of cattle that contained the red cow stolen from Ben Johnson, less the $5 cash advanced the defendant; and the further evidence of a debit for exactly one-half of this

amount charged against the account of the defendant on September 5, 1940, the day after this deposit was made. The defendant not having taken the witness stand, as was his right under the law, this evidence remains unexplained. To our mind, the jury was justified in drawing the conclusion therefrom that it was the identical check received for this shipment of cattle, including the cow of Ben Johnson, and that the item of debit was the check given by defendant to the witness Harris, as he testified.

This evidence, coupled with other facts and circumstances appearing in the record, is, in our opinion, sufficient under the law to corroborate the evidence of the witness Harris. The question as to whether his testimony was true or false was a question for the determination of the jury.

It may here be said that the record reveals that this defendant had, prior to the charges here preferred, been a citizen of Bryan county, Okla. The district judge, the sheriff, the assistant county attorney, and other prominent citizens of that county testified to the good character and reputation of defendant as a citizen of Bryan county. He had lived in Pushmataha county several years, and a number of prominent citizens of that county testified to his good reputation and character while a citizen of that community.

The judgment and sentence in this case was for a period of ten years in the State Penitentiary. This punishment was the maximum under the law, and was assessed by the jury. It is earnestly contended by counsel for defendant that this verdict was rendered under passion and prejudice, caused by the closing argument of the county attorney, when he said:

"But gentlemen of the jury, let me impress upon you this thing, now I have tried these cattle thieves before here and some of them have been convicted and some turned loose. You know as a matter of common knowledge in all these counties in southeastern Oklahoma and northeastern Texas that there has been cattle stealing and sometimes the cattle thieves are convicted and sometimes they get loose. Gentlemen of the jury, you have got the ring-leader now, don't let him get away."

The Attorney General, in his brief, admits that this was not proper argument, when he says:

"The comment that the defendant 'is the leader of them all, and you must not let him get away,' was probably going a bit strong. This statement is probably not justified by the record, but the rule is if error is committed it must be such as to deprive the defendant of a fair trial before it merits a reversal."

The case of Greer v. State, 74 Okla. Cr. 286, 125 P. 2d 225, is cited. It is there said:

"Where guilt of defendant is clear, no defense is offered, and jury assesses maximum punishment because of passion and prejudice created by argument of county attorney, this court, in furtherance of justice, will modify sentence imposed."

And the court further says:

"It would unduly lengthen this opinion to attempt to set forth the entire argument of the county attorney, but it consisted of an appeal to the jury to give the defendant the maximum penalty, because it was the first case on the docket and was the first whiskey case to be tried since the Fort Sill encampment was located at Lawton, and that he, the county attorney, wanted the jury to make an example of the defendant so that there would be no selling of whiskey to the young soldiers who were coming to Lawton.

"It is evident that the punishment, which is the maximum that may be assessed in a liquor case, was reached

by reason of the appeal made by the county attorney. All of the statements of the county attorney concerning the young soldiers in the encampment, and that a person had been killed on the highway by a young soldier who was full of whiskey, were wholly outside of the record and should not have been made.

"It is proper for the county attorney to prosecute criminal cases vigorously, but he should not press upon the jury any deductions from the evidence that are not reasonably legitimate. The argument herein was largely an appeal to the prejudice and passion of the jury.

"It is our conclusion that because of the inflammatory and prejudicial argument of the county attorney, the verdict of the jury and the judgment pronounced thereon is excessive and should be modified.

"We hold no sympathy for the defendant. The sign hereinabove referred to which was tacked on the wall of his place of business shows a positive disregard for the laws of our state. However, the law demands no victims and where it is evident that the punishment assessed was largely arrived at because of passion or prejudice engendered in the case, it becomes our duty to fix such punishment as is commensurate with the facts disclosed by the record."

We agree that the argument of the county attorney in this case was such as to cause prejudice and was improper. The defendant was given the maximum punishment of ten years in the penitentiary, by the jury. From an examination of the record as a whole, we are of the opinion that justice demands a modification of this judgment and sentence from ten years in the penitentiary to five years in the penitentiary.

As so modified, the judgment and sentence of the district court of Pushmataha county is affirmed.

JONES, P. J., concurs. DOYLE, J., not participating.