EDWARD McMURTRY v. STATE.

No. A-10510. June 6, 1945.

(159 P. 2d 567.)

Harold McArthur, of Tulsa, for plaintiff in error.

Randell S. Cobb, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty., of Tulsa, for defendant in error.

BAREFOOT, P. J.   Defendant, Edward McMurtry, was charged in the district court of Tulsa county with the crime of robbery wth firearms, was tried, convicted and sentenced to serve a term of 15 years in the State Penitentiary, and has appealed.

Defendant, being unable to make bond pending his appeal, is now confined in the State Penitentiary at Mc-Alester, and for this reason his case has been advanced.

The only contentions of defendant for reversal of this case are that the testimony of the accomplice is not corroborated in the manner prescribed by law; and that the venue was not properly proven.

This case is the outgrowth of the robbery of V. R. Dick of the sum of $1,200, in Tulsa county, on May 11, 1943. It is necessary to give a short statement of the evidence.

The prosecuting witness, V. R. Dick, lived in Kaw City, Kay county, Okla. He had been in business there, and sold his store in March, 1943, for the sum of $2,400. In the early part of May following, he and his wife went to Muskogee to visit, and with the view of buying some kind of business. On this trip, the witness carried $1,200 of the money received from the sale of his store. This money was in $100 bills, and was carried in a truss strapped about his body. The other $1,200 was left in Kaw City. The defendant, Edward McMurtry, was a cousin of the prosecuting witness, and the witness and his wife spent the night at the McMurtry home in Muskogee. Witness told defendant he was interested in buying some kind of business, and defendant suggested a "beer joint," and took him to see it. After looking at this business, witness told defendant he was not interested in buying it. During these negotiations, defendant asked the prosecuting witness if he had the cash to purchase a business. He was insistent about knowing this, and Mr. Dick finally showed him the money, and how he carried it in the truss.

After spending the night in Muskogee, the prosecuting witness and his wife left, going to Tulsa, and the defendant accompanied them. They spent the night in Tulsa, at the home of Mr. Dick's parents, and the next day returned to Kaw City, taking the defendant with

them. While in Tulsa the prosecuting witness looked at a shoeshop, and discussed the purchase of the same with the defendant. They made another trip to Tulsa on Friday of that week, and prosecuting witness told the defendant he was going back to Tulsa the first of the week to purchase the shoeshop.

On May 10th which was Monday, the prosecuting witness and his wife returned to Tulsa, taking the entire $2,400 with them, $1,200 in the truss, and the other $1,200 in a billfold. They went to the home of Mr. Dick's parents in West Tulsa. On the morning of May 11, 1943, prosecuting witness and his wife got in their car to go down town for the purpose of closing the deal and purchasing the shoeshop. Witness backed his car out in the alley, and drove down the alley to the street, and as they slowed down to enter the street some man, whom they did not know, jumped on the side of the car, which was a sedan, opened the back door and got in, saying, "I want to ride to town with you." The prosecuting witness looked around, and the man was pointing a pistol at him, and told him to "just keep this rolling like the way you are going and nobody will get hurt." The man told him, "Just keep her on your side of the road. You know how to drive this car—just one move out of you and I will kill you." He directed them where to drive, and they drove out of the city, and drove to a bargate, and then on about a mile and a quarter where the man ordered witness to stop the car. During this drive the wife of prosecuting witness asked the man if it was money that he wanted, and that if it was, she had $35 or $40 in her purse she would give to him. He answered, "Lady, I don't want your money."

When the car was stopped, the party ordered prosecuting witness out of the car, and told his wife to "stay

there in the car and not to try to do anything." He then directed the prosecuting witness to a place in the timber about 100 yards from the car and out of sight of Mrs. Dick, and told him to, "Get up on that rock and take your clothes off." Witness removed his clothes, but kept the truss on, and the man said, "Get that belt off, I want that." He then told witness to "go up there and sit down by that tree," and "don't you look around or turn your head for 45 minutes, or I will kill you." He then told the witness, "I am going to take your clothes and hide them—you will find them but it will take you a long time to do that."

Prosecuting witness sat by the tree five or ten minutes, and when he heard no sound, he looked around and not seeing anyone, got up and went to a house, told the lady what had happened, and called the officers. He later recovered the truss from the officers, but the money was gone. Thereafter he recovered $416 from Earl Allen and Junior Cole, two of the parties to the robbery.

When ordered out of the automobile, witness had slipped the billfold containing the $1,200 out of his hip pocket and his wife slipped it up her coat sleeve, and later hid it in the car. After he had stopped the car, and before being compelled to get out, prosecuting witness saw an automobile parked on a hill about three-quarters of a mile away, and while he was calling the officers he saw the car leave the place where it was parked. He could not testify that the party who robbed him was in the car, because of the distance.

Mrs. Julia Dick, the wife of the prosecuting witness, fully corroborated the testimony of her husband, and stated that the robber forced her husband to leave the car at the point of a gun, and took him into the timber where she could not see them. She remained in the car.

From where she was, she could see an automobile parked on a hill-side about half a mile distant. The robber, who was later identified as Junior Cole, came back to the automobile and told her that he only got about 60 cents from Mr. Dick, and said, "Now, I want your money." She gave him the money in her purse, about $45. He told her not to look at him, and not to even look around when he left, but after he had been gone a few minutes she turned around, and saw him going west, in the direction of the parked car. She saw the car move in about the time it would take for one to walk from where she was to the parked car. The car came toward where she was sitting in the car to the intersection, and turned north toward Ponca City and Kaw City. When asked how near to her the car came, her answer was, "Oh, I would say three blocks, anyway." She testified that it was a "gray looking car." She remained in the car until her husband returned with the deputy sheriff. The keys to the car had been taken by the robber.

Earl Allen, who was serving a term in the penitentiary for his participation in the robbery, testified as a witness for the state. He being an accomplice, it is contended that his testimony was not corroborated in the manner prescribed by law.

Allen testified that he lived near Kaw City in May, 1943, and was running a truck farm. That in the early part of May, and the day before the robbery of Mr. Dick, he was driving from his home to Ponca City, and met the defendant, Edward McMurtry, and Junior Cole, walking south on the highway north of Ponca City, about 2:30 or 3 o'clock in the afternoon. He went on to Ponca City, and as he returned he again saw them walking on the highway, and saw them turn toward Kaw City. It was raining and he stopped and picked them up. They asked

him not to drive through the streets, and he asked them if they were "hot," and they told him they were not, that they were going over there to kill some time. He took them to his home, arriving there about 5 p.m.. Later, the witness and Junior Cole drove over to Shidler to see a brother of Allen, and returned to the Allen home before dark. Junior Cole told witness what they were there for, and after their return the witness, Edward McMurtry and Junior Cole had a conversation with reference to robbing Mr. Dick. They told witness Mr. Dick was supposed to have $1,200 cash, and was carrying it in a truss. It was agreed that they would rob him, and the money would be divided three ways. Mr. Dick lived over the store, in Kaw City, and all three of them drove up there after dark, but the Dick car was not there. They inquired of a neighbor, and learned that Mr. Dick had gone to Tulsa, and Junior Cole, who had made the inquiry, obtained his address in Tulsa, but the defendant looked at it, stated that he knew where he would be, and destroyed the address. Witness told them he was going to Tulsa the next day, but they decided to go that night, and the three of them drove to Tulsa, arriving there after midnight, and spent the remainder of the night in a hotel. The witness and Junior Cole occupied one room, and the defendant a room just across the hall. Defendant obtained the hotel rooms. It was arranged that they would rob Mr. Dick the next day. They got up early and had breakfast, and drove out past the place where defendant said Mr. Dick would be staying, and saw his car in the yard. They then drove on out in the country, and located a place where Junior Cole would take Mr. Dick and rob him, and where the witness and defendant would park nearby and pick him up after the robbery was committed.

They then returned to Tulsa, and parked about half a block from where the Dick car was parked. In a very short while they saw Mr. and Mrs. Dick come out and enter the automobile, and start down the alley, and Junior Cole ran down and entered the Dick car, as testified to by Mr. and Mrs. Dick. Witness furnished the automatic pistol to Junior Cole. The witness and defendant followed the Dick car, and waited about 400 yards distance until Junior Cole came to his car and said, "I made it all right."

Junior Cole gave witness $320, three $100 bills and one $20 bill. He did not see the defendant and Junior Cole divide the balance, as he was driving the car, and testified, "I was driving pretty fast." Junior Cole told him he got $1,000. Witness drove to Highway 18 south of Pawnee eight or ten miles, let the defendant and Junior Cole out of the car about 10:30 or 11 o'clock in the morning, and they started walking south, and witness went on to Shidler, and to Kaw City, and home. They used Earl Allen's car, a "bluish gray" Plymouth.

On cross-examination this witness testified to his serving a sentence in the State Penitentiary and to having been a drug addict, but claimed he had been cured while in the penitentiary.

Among other witnesses for the state whose testimony corroborated that of the witness Allen was Mrs. E. E. Torbett, of Tulsa. She testified that she operated the DeLuxe Hotel, in Tulsa, and of the defendant coming to her hotel on the night of May 10, 1943, after midnight, and renting two rooms. That two other men came and occupied one of the rooms. She was unable to identify the other two men, but saw them come in some time after midnight. She assigned the defendant to room No. 4,

and the other two men occupied room No. 5. She saw defendant early the next morning, but did not see the other two men. She cleaned up the rooms, and knew that both beds had been slept in.

Two witnesses, Bill Roubideaux and J. C. Lee, testified for the state. Roubideaux testified to seeing the defendant and another man walking about eight miles north of Ponca City on the highway going to Kaw City on May 10th, between 12 o'clock and 1 p.m. Mr. Lee testified to seeing the defendant about 2 o'clock in the afternoon on May 11th and again that evening at the home of Mr. Johnson, defendant's father-in-law, and that defendant introduced him to a man, and he believed his name was Junior Cole.

Jimmie Moore testified that he was working for Earl Allen on his truck farm near Kaw City on May 10, 1943. That he saw the defendant and Junior Cole when they came with Earl Allen to his home during the afternoon of Monday, May 10, 1943. That Earl Allen and Junior Cole left soon thereafter to go to Shidler, and defendant remained there until they returned, about 5:30 or 6 o'clock in the afternoon. That the three of them left together in Allen's "grayish black" Plymouth automobile about 10 p.m., and that Allen returned home alone the next afternoon.

Defendant did not take the witness stand, and did not offer any evidence in his behalf.

The statute with reference to the necessity of corroboration of the testimony of an accomplice is 22 O. S. 1941 § 742, and is as follows:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the com-

mission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

This statute has been so often construed by this court that it is unnecessary to cite or quote from the many cases decided. All of the cases are cited in the annotated statutes, and may be referred to by those interested.

The rule followed by this court is stated in the case of Perry v. State, 74 Okla. Cr. 234, 125 P. 2d 219, where it is said:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

"This does not mean a separate and complete proof of a crime, but only that there should be some evidence of material facts in addition to the testimony of the accomplice tending to connect the defendant with the commission of the crime charged."

See also Rice v. State, 60 Okla. Cr. 398, 64 P. 2d 1240; Henson v. State, 69 Okla. Cr. 273, 101 P. 2d 1060; Spivey v. State, 69 Okla. Cr. 397, 104 P. 2d 263; Wilkins v. State, 70 Okla. Cr. 1, 104 P. 2d 289; Rowland v. State, 75 Okla. Cr. 164, 129 P. 2d 609; Edson v. State, 77 Okla. Cr. 100, 139 P. 2d 198; Plaxico v. State, 78 Okla. Cr. 353, 148 P. 2d 201; Hamilton v. State, 79 Okla. Cr. 108, 152 P. 2d 119; Anderson v. State, 79 Okla. Cr. 194, 153 P. 2d 245.

In the instant case the court instructed the jury as a matter of law that the witness Earl Allen was an accomplice, and that it was necessary for the jury to find

that his evidence had been corroborated before they could consider the same.

An examination of the record as above set out reveals that the testimony of the witness Earl Allen was abundantly corroborated, and this by a number of disinterested witnesses. It is unnecessary to point out the testimony, as it clearly appears from the statement of the evidence heretofore made.

The contention that the evidence was insufficient to show that this crime was committed in Tulsa county cannot be maintained. The evidence of several of the witnesses, and especially of the prosecuting witness, was sufficient to sustain the venue as being in Tulsa county.

An examination of the record reveals that the defendant had a fair and impartial trial, and the judgment of the district court of Tulsa county is affirmed.

JONES, J., concurs. DOYLE, J., not participating.