Robert Dean STEPHENS and Charles
Thomas Stotts, Appellants,

v.

The STATE of Oklahoma, Appellee.

No. A–16721.

Court of Criminal Appeals of Oklahoma.

Nov. 29, 1972.

Lampkin, Wolfe, Burger, Abel, Mc-
Caffrey & Norman, Oklahoma City, for
appellants.

Larry Derryberry, Atty. Gen., Fred H.
Anderson, Asst. Atty. Gen., Frank Muret,
Legal Intern, for appellee.

OPINION

BUSSEY, Presiding Judge:

Appellants, Robert Dean Stephens and
Charles Thomas Stotts, hereinafter re-
ferred to as Defendant Stephens and De-
fendant Stotts, were charged, tried and
convicted in the District Court of Okla-
homa County, Oklahoma, for the offense
of Robbery With Firearms. Their punish-
ment was fixed at twenty-five (25) years
imprisonment, and from said judgments
and sentences, a timely appeal has been
perfected to this Court.

At the trial, Robert Craven testified that
on December 8, 1970, he was employed as
a pharmacist at Langsam's Mayfair Drug
at 5012 North May in Oklahoma City. At

approximately 7:15 to 7:30 p. m., while he was talking on the telephone, a man walked behind the prescription counter, hung up the telephone receiver, showed him a gun and asked where the safe was located. They proceeded to the back of the store and he opened the safe. When it was revealed that there was no money in the safe, the man asked where the money was. He, Craven, stated that all the money was kept in the cash registers. They proceeded to the back cash register and he put the bills in a plain paper bag. They then proceeded to the front cash register, which was also emptied. He placed the money in the bag, and handed it to the man. He was instructed to go to the back of the store and to not go out the door. He testified that he could not specifically identify the man who held the gun on him because he had his back to him most of the time. He further testified that the gun had a long barrel, approximately nine inches long. The money taken was in denominations of Ones, Fives, Tens and Twenties.

Marguerite Reid testified that she was employed at Langsam's Drug Store on the evening in question. While she was waiting on a customer near the pharmacy case, she observed a man, whom she identified in court as Defendant Stotts, holding a gun on Bob Craven. She observed them go to the back of the store. Shortly thereafter, Craven walked behind her carrying a sack. He went to the cash register and then proceeded to the front of the store.

Charlotte King testified that she was in Langsam's Drug Store that evening talking to Mrs. Reid. She observed a man, whom she identified in court as Defendant Stotts, walk behind the pharmacy counter. She started walking up the aisle when another man, whom she identified in court as Defendant Stephens, motioned her to step over into the aisle in which he was standing. He told her to stand in the area. She next observed Mr. Craven approach the back cash register with a sack in his hands followed by Defendant Stotts. Cra-

ven then proceeded to the front of the store, again followed by Defendant Stotts. As they walked toward the front of the store, she observed a gun in Defendant Stotts' hand. She testified that Defendant Stephens was dressed identically the same on the evening in question as he was dressed at the trial.

George Heidelberger testified that he was employed as a salesman for David's Menswear in the Mayfair Shopping Center. On the evening in question, he observed two male subjects run past the front of his store. He looked out the side window and observed them getting into a late model convertible. He wrote down the tag number of the vehicle and gave the information to the police. It was an Alabama tag.

Detective Jerry Legg testified that on the evening in question he recieved a radiogram concerning a robbery at Langsam's Drug. The radiogram contained an Alabama tag number, 27–16483. At approximately 2:30 a. m., he and his partner, Detective Acox, observed a 1969 Oldsmobile convertible, tag number 27–16483, parked in the west parking lot of the Hilton Inn Motel on Northwest Expressway. They proceeded into the motel and had a conversation with the desk manager. They accompanied the desk manager to Room 810. The desk manager knocked on the door and the Defendant Stephens opened it. He observed that Defendant Stephens closely fit the description in the radiogram as one of the persons who participated in the robbery. Defendant Stephens was placed under arrest and advised of his constitutional rights. One Hundred Eighty-five Dollars ($185.00) in cash was lying on a night stand next to the bed.

Detective Acox testified that he was with Detective Legg when they observed the convertible in the parking lot. They proceeded into the motel and talked to the desk clerk. He found out that one person had registered into the motel at approximately 1:36 p. m. giving a Selma, Alabama

address. The registration showed that three people were occupying Room 808 and 810. He contacted other officers for assistance and shortly thereafter, they all proceeded to the 8th Floor of the motel. They first went to Room 810 and knocked on the door, which was opened by Defendant Stephens. Several officers entered Defendant Stephens' room while he and three other officers went to Room 808. They knocked on the door, which was opened by a girl, Harriet Weems. They stated that they were looking for Charles Stotts and she replied that he was inside in bed. They entered the room, advised Defendant Stotts that he was under arrest for Armed Robbery, and searched the room. Detective Acox further testified that he found a .22-caliber revolver with an approximate barrel length of six inches under the pillow of the other bed in the room. One Hundred Forty-eight Dollars ($148.00) in Five and One Dollar bills were found in an attache case.

For the defense, the defendant called Paul Clark who testified outside the presence of the jury in support of the defendants' motion to suppress. He testified that on the morning in question he was the night manager of the Hilton Inn Motel. He was approached by two police officers who asked him if he had anyone registered from Alabama. He checked the registration and showed them a registration card. He subsequently accompanied the police to the 8th Floor and knocked on the door of Room 810. The man in the room stated, " 'Who is there?' " and he replied, " 'The night manager; I need to talk to you.' " (Tr. 119) The man opened the door and he walked in, followed by the officers. The officers asked him his name, where he was from, and if he had ever been arrested. The man stated that he lived in Alabama. The officers then ordered him to get dressed. Clark testified that he did not remember seeing any money lying on the night stand. He accompanied other officers to Room 808 and knocked on the door. A girl came to the door and stated,

" 'What do you want?' ". He replied, " 'There are some police officers here and they want to talk to you.' " (Tr. 121) She opened the door and the officers entered the room. They informed the man in the room to get in the corner and get dressed. They asked both the man and the girl similar questions and searched the room.

On cross-examination, he testified that he and the night auditor went through all of the registration cards and only one had an Alabama address.

The defendants did not testify nor was any further evidence offered in their behalf.

■ The sole proposition asserts that the trial court erred in overruling defendants' motion to suppress the evidence. The defendants first argue that they were prejudiced by the non-appearance of the police officers at the hearing on their motion to suppress immediately prior to the trial. The defendants did not subpoena the officers but rather relied on their appearance at 9:00 a. m. on the trial date in response to the State's subpoena. We have previously held that where a motion to suppress the evidence is interposed by the defendant, the burden of proof is on the proponent of the motion. Micklick v. State, Okl.Cr., 285 P.2d 462. In Hood v. State, 80 Okl.Cr. 175, 157 P.2d 918, we stated in the second paragraph of the Syllabus:

"If defendant thinks a witness whose name appears upon the information will give testimony favorable to him, it is his duty to have a subpoena issued for him, if his testimony is desired."

In the instant case, we are of the opinion that the defendants may not claim prejudice by the non-appearance of the police officers at the hearing on their motion to suppress when they did not show diligence by issuing subpoenas for their appearance.

■ Defendant next argues that the arrest of the defendants and the incidental

search of the premises was unlawful. We are of the opinion that the arresting officers possessed sufficient information to establish reasonable cause for believing the defendants had committed the robbery with firearms. The officers had received a radiogram report giving them a general description of the subjects involved in the robbery and a description of the vehicle and the tag number. Upon observing the vehicle with the reported tag number in the parking lot of the motel, the officers ascertained that there had only been one registration in the motel from the State of Alabama. We, therefore, conclude that the arrests were lawful and the searches incident to the arrests likewise lawful.

The judgments and sentences are affirmed.

BRETT, J., concurs.