**Tommy Ellis McGLOCKLIN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–73–129.**

Court of Criminal Appeals of Oklahoma.

Nov. 30, 1973.

Ed Dudley, Durant, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., for appellee.

BLISS, Presiding Judge:

Appellant, Tommy Ellis McGlocklin, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court, Bryan County, Oklahoma, for the offense of Murder. His punishment was fixed at life imprisonment in the State Penitentiary. From said judgment and sentence, a timely appeal has been perfected to this Court.

The evidence adduced at trial shows that the body of Patsy Marie Keltner, the owner and operator of a service station located in Madill, Oklahoma, was found lying beside a Bryan County highway on the 19th day of November, 1972. An examination of the body reflected blood on the back of the head and coming from the victim's nostrils. Blood was also found on the water near the body. On the 20th day of November an autopsy was performed at which time it was determined that the cause of death was multiple gunshot wounds to the head. Two leaden or metal bullets were removed from the skull.

Pam Thomison testified that at approximately 5:00 p.m. on the afternoon of November 18, 1972, she and Jeannie Knight had an occasion to be at the location of the Keltner service station in Madill. She identified the defendant as the person escorting the victim into a green station wagon parked by the service station. On cross-examination she testified that she noticed that the victim's hands were behind her back when she was escorted to the station wagon and that the defendant and the victim drove off in the station wagon. She further testified that the victim was walking in front of the defendant and the defendant was motioning with his elbow towards the car.

Jeannie Knight then testified that she saw the defendant and the victim walking towards the automobile, that the victim had her hands behind her back, that the defendant "kind of" pushed the victim's arm and that it looked as though her hands were tied behind her back. Subsequently Miss Knight and her father went down to the courthouse in Madill where she saw the defendant getting out of a police car and that she was positive he was the same man she saw at the station.

Rita Keltner, the victim's daughter, then testified that she had gone to her mother's service station and found it abandoned with money still in the cash register and that she knew something was wrong. She then went to the police station to report the incident and was accompanied back to the station by two officers. The premises were searched and the victim was not found. While there, the officers looked inside a black and white automobile parked next to the station and on the premises. Miss Keltner then identified a certain key ring and keys as being her mother's.

Officer Buford Huff of the Madill Police Department then testified that on the evening of November 18, he had an occasion to see Rita Keltner and after a conversation with Miss Keltner he put out over the police radio an all points bulletin for her mother's car. The officer then accompanied Miss Keltner to the service station and found there a black and white automobile which he presumed to be connected with the "kidnapping." In an attempt to determine the ownership of the vehicle he looked inside and discovered a card which evidently disclosed the defendant's name. The officer further testified that the key ring mentioned above was a set of keys that Sheriff Stewart brought to him from Tishomingo. He took the keys

to the Keltner station and used one to open the front door and one to start the Keltner station wagon.

Officer Henry Morgan of the Madill Police Department then testified that when they arrived at the Keltner station the Keltner car was missing and they found the title from which they obtained the tag number. He subsequently went to Tishomingo and found the Keltner station wagon sitting in front of a local tavern. Upon a search of the vehicle he found the defendant's coat and a pistol lying under the left front seat. On cross-examination Morgan testified that the defendant told him it was his coat and that Morgan was positive that the pistol and holster he identified at the trial was the same weapon taken from the Keltner automobile.

Johnston County Sheriff Everett Stewart then testified that on the 18th of November he received an all points bulletin from the Madill Police Department to be on the lookout for a 1969 station wagon with tag number MR–3497 and that the defendant was being sought in connection therewith. He found the automobile in front of a local tavern and arrested the defendant when he found him inside the tavern. The defendant was advised of his rights and the defendant told the Sheriff that he had come to Tishomingo with one Buster Dunn in Dunn's pickup. The defendant was taken to the Sheriff's car where they remained until officers from Madill arrived and that during their wait in the Sheriff's car the defendant seemed to be nervous. The Sheriff subsequently found the above mentioned keys in his car where the defendant had been sitting. On cross-examination the Sheriff stated that there was no way in which the keys could have gotten into his car other than by the defendant and that the defendant denied that he had driven the Keltner station wagon to the tavern.

Guy Hauser then testified that he was acquainted with the defendant, saw him in the Tishomingo tavern on the night in question, and that the defendant had told him that he had just bought the green station wagon and was going to give it to his mother.

Sheriff James Splawn of Marshall County then testified that he went to the scene of the discovery of the body and viewed same on the 19th of November. There was blood on the water near the body and blood coming from the victim's nostrils. He then testified as to.the chain of possession of the above mentioned weapon and stated that the defendant had admitted being with the victim at 7:00 p.m. Saturday night in Tishomingo and that he had been at the Keltner station on Saturday afternoon after the universal fell out of his car and he coasted into the station. The Sheriff further testified that he had an occasion to examine the Keltner vehicle and that he found no evidence of blood.

Assistant District Attorney Joe Minter then testified that he had visited the scene when the body was discovered, that he viewed blood on and near the body, and that he inspected the Keltner station wagon and found no blood. He then related that the defendant told him that the defendant had been at the Keltner station at approximately 3:00 p.m. on the 18th and that he came there because he was having trouble with the universal joint on his automobile. The defendant told Minter that he and Mrs. Keltner pushed the car to the side of the station when they discovered they could not get a part for it. The defendant then told Minter that he left the area of the station with a person by the name of Buster Dunn who took him to a place called Cajun Baby's where they remained until 6:00 or 7:00 p.m. and then Buster Dunn took him to Tishomingo.

Ray Lambert, a firearms examiner for the Oklahoma State Bureau of Investigation, then testified that he conducted ballistics examinations concerning the bullets recovered in the autopsy and the weapon found in the Keltner car. It was his expert opinion that the weapon had fired the bullets.

Wayne Hogan, the operator of a service station in Sherman, Texas, then testified that he was acquainted with the defendant

and saw him on the morning of Saturday, the 18th day of November at his station. Hogan identified the pistol as being his and stated that the day after the defendant visited his station he discovered that the weapon was missing.

The State then called three witnesses who each testified that they had seen the defendant at Cajun Baby's on the 18th day of November and that he left about 4:30 or 5:00 that afternoon. One of the witnesses stated that she saw the defendant leave alone in a white looking automobile.

The State then called George Dean Dunn who stated that he was commonly known by his nickname of "Buster," that he was acquainted with the defendant, and that he saw him at a cafe in Milburn, Oklahoma, on the 18th which was the only place he saw him. A subsequent witness then testified that he was working at a service station in Milburn on the evening in question, that the defendant stopped to get gas and he was driving a 1969 green station wagon. Five other witnesses were also called and they corroborated the prior testimony that the defendant was seen in Milburn on the night in question, that he was alone, and that he was driving a 1969 station wagon. The State then rested and the defendant also rested without introducing any evidence.

The defendant's first proposition in error urges essentially that the search of the defendant's automobile parked beside the Keltner service station was illegal and that the "fruit of the poisonous tree doctrine" prohibited the State from using any information derived from said search or any evidence obtained therein in any manner prejudicial to the defendant. In essence the defendant urges that after the officers found the defendant's name upon a card in the defendant's car they were prohibited from investigating the defendant's connection with the crime in any manner.

The record reflects that Officer Huff and Officer Morgan accompanied the victim's daughter back to the station in order to try to find the victim or any information concerning her disappearance. The station

and the vicinity were searched for the victim to no avail. Officer Huff noticed a black and white Oldsmobile parked next to the station which he presumed to be connected in some way with the disappearance and made an attempt to determine its ownership by looking inside. At that time, a card was found upon which appeared the defendant's name. An all points bulletin was then issued seeking the defendant and the Keltner car.

■ The defendant urges that the search of the defendant's car was illegal since it was made without a warrant. However, under the particular facts of this specific case, we cannot agree. The two young girls mentioned above witnessed the victim being escorted out of the station and into the green station wagon in such a manner that they immediately notified the police. The station was found unattended with water and air hose still in place, equipment left outside, cash remaining in the cash register and books not totaled. An unfamiliar vehicle was parked next to the station and the Keltner station wagon was gone. Under these circumstances it was not unreasonable for the officers to attempt to determine the identity of the owner of the vehicle. In fact, to do otherwise might be a dereliction of duty of said officers. Therefore, it cannot be successfully argued that the search of said automobile for said limited purpose was unreasonable.

■ The defendant further argues that the arrest of defendant in Tishomingo without a warrant was illegal since Sheriff Stewart was acting solely on hearsay arising out of the all points bulletin. We do not agree. In the instant case the instigating officers had reason to believe that a felony had been committed and that the defendant had committed same. There were eyewitness descriptions of the defendant and the description and tag number of the missing vehicle were known. See Stephens v. State, Okl.Cr., 503 P.2d 1309, and Fowler v. State, Okl.Cr., 512 P.2d 238.

■ The defendant further contends that the trial court erred in not allowing

defense counsel to question Officers Morgan and Huff outside of the presence of the jury concerning the search of the defendant's car. However, the record reflects that the defendant did not request such an evidentiary hearing until after the State had rested. All evidence had already been introduced and admitted. Therefore, it is this Court's opinion that the request was not timely.

For all the reasons set out above, the defendant's first proposition in error is without merit.

The defendant next contends that the trial court erred in refusing to grant a trial continuance of forty-eight (48) hours in order to allow defense counsel to ascertain the testimony of certain witnesses endorsed after the preliminary hearing when notice of the endorsement had not been furnished the defendant or his attorney.

The record reflects that of the three witnesses subsequently endorsed two testified at the preliminary hearing and the defense counsel waived any procedural objection as to them. The other witness endorsed without notice was Richard Prouty who testified that he was Chief Forensic Toxicologist with the State Medical Examiner's Office, that he made a chemical analysis of a specimen of the victim's blood for the presence of alcohol and that the test was negative. The defendant did not cross-examine the witness.

■ The State urges that Mr. Prouty's testimony was never mentioned or alluded to further and was in no way material to the trial of said cause and that under those specific circumstances, the trial court did not abuse its discretion in refusing a continuance.

■ This Court is cognizant of the general rule that it is reversible error to fail to grant a continuance when the testimony of the witness endorsed without notice is material. McCollough v. State, Okl.Cr., 360 P.2d 727. However, this Court has also held on numerous occasions that it is not reversible error for the trial court to allow the endorsement of additional witnesses unless it clearly appears that there is prejudice to a substantial right of the defendant. McCluskey v. State, Okl.Cr., 372 P.2d 623.

In the instant case it is obvious that the testimony of Mr. Prouty was not material or in any way prejudicial to the defendant. Therefore, the trial court did not abuse its discretion in refusing the continuance. The error, if any, is harmless, no constitutional issue was raised by the defendant's brief, the issue was not raised by the defendant's Petition in Error and, for said reasons, the defendant's second proposition is without merit.

■ The defendant's third proposition contends that the trial court committed reversible error by refusing to give defendant's requested instructions to the jury. An examination of the instructions of the trial court as presented to the jury reflects that they fairly and correctly state the law applicable to the instant case. Therefore, defendant's contention is without merit.

■ The defendant next urges that the trial court committed reversible error in failing to sustain defendant's demurrer to the evidence. It is obvious from a reading of the record that the State introduced competent evidence from which the jury could reasonably conclude that the defendant was guilty as charged. It was, therefore, the exclusive province of the jury to weigh the evidence and determine the facts and the demurrer was properly overruled.

■■ The defendant next contends that the State failed to prove proper venue and, therefore, the trial court committed reversible error in overruling the defendant's motion to quash. We do not agree. Venue may be established by direct testimony or circumstantial evidence or both. McMurtry v. State, 81 Okl.Cr. 24, 159 P.2d 567. Venue does not have to be proven beyond a reasonable doubt. Vanderslice v. State, 59 Okl.Cr. 192, 57 P.2d 267, and Application of Severns, Okl.Cr., 330 P.2d 748. In the instant case there was sufficient circumstantial evidence presented by the State for the jury to have reasonably determined

that the crime was committed in Bryan County.

The defendant's next proposition in error contends that the trial court committed reversible error in failing to grant a new trial when it was discovered that the pistol which was subsequently introduced into evidence was in plain view on the counsel table during voir dire examination of the jury. In support of said contention the defendant cites State v. Wynne, 353 Mo. 276, 182 S.W.2d 294, wherein the conviction of a woman for the murder of her ex-husband's wife was reversed because of the improper display of a gun which could not properly be admitted in evidence.

In the instant case the gun was subsequently admitted into evidence. As soon as the defense counsel objected to the gun's presence, it was removed from the jury's view until it was later introduced and admitted. It is, therefore, the opinion of this Court that no substantial right of the defendant was prejudiced and that the error in this particular case was harmless. See also State v. Polson, 81 Idaho 147, 339 P.2d 510.

The defendant next contends that the trial court erred in failing to grant a mistrial when Officer Huff stated that the defendant's automobile was searched because the officers presumed that "it was tied in with the possible kidnapping." The defendant argues that the reference to a "kidnapping" implied that the defendant was guilty of other crimes. An examination of the record reflects that at the time the officers looked into the automobile they were logically and properly investigating a possible kidnapping and the statement was properly admitted as a part of the res gestae. Defendant's proposition is, therefore, also without merit.

Defendant's last contention urges that the trial court erred in failing to grant a mistrial due to improper argument of the District Attorney. The record reflects that the statements objected to at trial are as follows:

"By Mr. McGahey: * * * At this particular time gentlemen, in Milburn, there is nobody else in the car. She has already been dumped by the side of the road, on Saturday night."

"By Mr. McGahey: * * * Do you know what I'll bet you? I'll bet you if we had had nine hundred fingerprints up here, counsel wouldn't agree with any of them. Not a one."

With respect to the first statement the record reflects that the victim's body was found alongside a road in a depression. The prosecutor's statement was not a comment based upon evidence outside of the record.

With respect to the second statement objected to the record reflects that the defense counsel during closing argument was the first to mention fingerprints and the lack thereof. Said remarks invited a reply by the prosecutor. In Tilford v. State, Okl.Cr., 437 P.2d 261, this Court held as follows:

"Generally, remarks of the prosecuting attorney, including such as might or would otherwise be improper, are not grounds for reversal where they are invited, provoked, or occasioned by accused's counsel or are in reply to or retaliation for his acts or statements. * * * *"

Therefore, the trial court did not abuse its discretion in failing to grant the mistrial and defendant's last proposition in error is without merit.

After considering the record as a whole, we do not find that defendant has been deprived of any substantial right, but that the issues are fairly presented to the jury, and defendant received a fair and impartial trial. The verdict and judgment appealed from is, accordingly, affirmed.

BRETT and BUSSEY, JJ., concur.