## WM. F. COOK v. STATE.

No. A-5892.   Opinion Filed March 14, 1927.
(253 Pac. 1029.)

Chester H. Lowry, Brown Moore, and R. J. Shive, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, P. J. The information in this case charged that Wm. F. Cook, on the 16th day of May, 1925, did sell to John Wheat, for the sum of $2, one pint of corn whisky. The trial resulted in a verdict of guilty as charged. A motion for new trial was duly filed and denied, whereupon judgment was pronounced and he was sentenced to be confined in the county jail for 60 days and to pay a fine of $250.

In support of the contention of counsel for appellant that the judgment should be reversed, a number of errors are assigned and argued, but one of which it is deemed necessary to notice, and that is misconduct of the prosecuting attorney.

The state relied for this conviction upon the testimony of the complaining witness, John Wheat, who testified:

"I bought a pint of whisky from the defendant and paid him $2. I told him I wanted a little roasting ear wine; he said he didn't have any. I said I would like to get some. He went away and got a bottle."

Witness identified the bottle and said it contained corn whisky; that defendant told him he got the whisky from another person.

On cross-examination, he testified that he had been a policeman; that he was now working for Payne county, out of Mr. Suman's office; that he expects to get paid for this case; that Mr. Suman said he would get paid; that after he got this whisky he kept it in his possession from the 16th of May until the 6th of June, when he swore to the complaint in this case;

that he had difficulty in making the purchase, went to the defendant's place two different times, defendant was not there the first time; that he had been a detective quite a while, on the whisky business about a year in western Oklahoma.

For the defense, T. J. Hoyt, former sheriff for four years of Payne county, John Brown, Peter Harris, M. E. Fletcher, M. J. Bradley, and Gerd Flesner, business men of the city of Stillwater, each testified that they knew, the defendant's reputation in that community for being a peaceable, law-abiding citizen, and that reputation was good.

As a witness in his own behalf the defendant, a colored man, testified that he had lived in Stillwater eight or nine years and was never before arrested; that he did not sell the complaining witness any whisky on the date alleged, or at any other time; that he never came to his home at any time.

His cross-examination, over the defendant's objections, was as follows:

"Q. Bill, while John Wheat was down there, at the time you sold him this liquor, you sold another quart to three boys, for $4. A. No, sir.

"Q. You sold John Wheat a pint, and three boys a quart, you got $2 for this, and $4 for that?

"The Court: Objection overruled. As to the time and place, make him tell whom he sold it to. Exception allowed.

"Q. Up until you sold that liquor you were not doing anything else but selling liquor? A. I didn't sell any.

"Q. Automobiles were stopping there at all times of the night, and you were selling liquor to the people that were coming there. A. Not at my place.

"Q. Where were you selling the liquor? A. I wasn't selling any."

Carrie Cook, wife of the defendant, testified that the witness, John Wheat, never came to her home; that her husband did not deal in liquor.

One of the grounds of the motion for new trial is that the defendant did not have a fair and impartial trial on account of the misconduct of the county attorney in cross-examining defendant, and on account of misconduct of the county attorney in his argument to the jury, wherein he stated:

"If you stand for the enforcement of the liquor law, you will go out and convict the defendant; but if you don't stand for the enforcement of the liquor law, you will go out and turn him loose."

And further stated:

"Gentlemen of the jury, there is always some lawyer that is ready to come into court and frame witnesses to testify as to the good reputation of a bootlegger like this, but if you let them get by with it, it will destroy the jury system of this country and our country will go to ruin."

Which statements were improper and prejudicial to defendant and tended only to arouse the passion and prejudice of said jury.

Counsel for defendant, so far as the record discloses, did not object to the foregoing statements of the county attorney at the time they were made, and they are only shown by the motion for a new trial.

It is the well-established practice in this state, that where error is assigned on the ground of alleged misconduct of the county attorney in his argument to the jury, the attention of the court should be called to the language used by proper objection, and a ruling had thereon by the court, and exception thereto reserved,

and the question will then be reviewed; or if the court settles and signs a bill of exceptions, showing the alleged misconduct, the question will be reviewed; but where the objection made and exception taken is not shown in the record or by bill of exceptions settled and signed, the question is not properly presented for review. Reed v. State, 14 Okla. Cr. 651, 174 P. 800; Collins v. State, 15 Okla. Cr. 96, 175 P. 124; Browder v. State, 16 Okla. Cr. 43, 180 P. 571.

It is an abuse of judicial discretion to allow questions to a witness which are manifestly calculated to create prejudice in the minds of the jury against the witness, and, if he be the defendant, influence them to find against him because of such prejudice.

In the case of Jelts v. State, 7 Okla. Cr. 734, 123 P. 1130, it is said:

"This court has always been exceedingly liberal with the prosecuting attorneys of this state, and endeavors always to uphold every proper conviction brought here on appeal. But a prosecuting attorney should not permit his high office to be prostituted in the interest of malice or oppression. He should not be guilty of indulging in the character of examination disclosed by this record. It does not make any difference how guilty a man is, he ought to be tried in a fair and impartial manner, and according to law. Prosecuting attorneys are not charged with the duty of securing convictions by improper methods. They should see that substantial justice is meted out in the manner provided by law, and no conviction should be sought or demanded unless it can be had by compliance with the safeguards and rules established to prevent oppression."

In Hager v. State, 10 Okla. Cr. 9, 133 P. 263, it is said:

"It is true that great latitude should be allowed attorneys in cross-examining witnesses, but their ques-

tions should not contain insulting insinuations and intimations that a defendant is guilty of some other crime."

A prosecuting attorney, in his zeal to enforce the law, must not forget that he also occupies a semi-judicial position, and that his duty requires him to resort to no questionable and improper means to secure a conviction. Trial courts should confine the cross-examination of witnesses to legitimate subjects of inquiry, and should not permit a witness to be browbeaten or asked insulting questions.

Our examination of the evidence leaves grave doubt in our mind as to defendant's guilt. The only evidence against defendant was the uncorroborated testimony of an informer, who styles himself a private detective; and the questions quoted, and others of like kind, must have been prejudicial to defendant. Where a defendant in a criminal case offers himself as a witness on his own behalf, he is subject to the same rules of cross-examination as other witnesses, and it is the duty of the court to keep the cross-examination within the law.

There are other errors in the record which need not be noticed. For the reasons stated, the judgment appealed from is reversed.

EDWARDS and DAVENPORT, JJ., concur.