## BERT NEELY v. STATE.

No. A-9084.  Oct. 16, 1936.
(61 Pac. [2d] 741.)

Brown Moore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error in this opinion, for convenience referred to as the defendant, was convicted of having possession of a whisky still capable of manufacturing and distilling intoxicating liquor, to wit, whisky, and sentenced to pay a fine of $50 and to be imprisoned in the county jail for a period of 30 days.

The testimony in this case shows the officers of Payne county went to the home of the defendant and searched his premises; about three-quarters of a mile from defendant's home they found an old cave in which there were some barrels and other rubbish, but it showed no evidence of having been used for some time; they then went to the barn, which was about 50 yards from the house, and in the upper story of the barn found a still covered with hay; one of the officers stated they could smell the odor of mash or whisky in this still. The testimony of the two officers was all the testimony offered by the state.

Neither the defendant nor his witnesses denied the officers found the still in the barn loft on the premises where the defendant resided. The defendant, testifying for himself, denied he had any knowledge that the still was in the loft; the hay in the loft belonged to the landlord and was in the barn when he moved on the place.

The defendant's landlord, Pat Penny, testified the hay had been in the barn loft for more than a year, and

was there before the defendant moved on the place. One of the officers testified he did not see any baled hay in the loft. Two boys by the name of Dorman, who had been to the hayloft some time previous to its being searched, stated that the defendant had agreed that the neighborhood boys might have a barn dance in the loft of the barn and they were there for the purpose of moving the hay and getting ready for the dance; in moving the hay they moved this still into one corner of the barn loft and piled the hay back over it.

Earl Large, testifying for the defendant, stated he knew where the cave was on the Penny place; he was over to the Neely place one time to get the still and take it away; that he was to do this for his father, but he did not get it. The foregoing is the substance of the testimony introduced by the state and the defendant.

The defendant has assigned five errors alleged to have been committed in the trial of his case, the fifth error being:

"The court erred in overruling the motion for a new trial which was filed by the plaintiff in error."

This assignment covers all the errors that it is necessary to consider in this case. It is disclosed by the record that there is a conflict in the testimony. The officers testifying to the finding of the still in the barn loft located on the premises the defendant occupied. They knew nothing about how it happened to be there, and only testified as to where they found it. On the other hand, the testimony of the defendant, the owner of the farm, two Dorman boys, and Earl Large, was that the still was in the barn loft when the Dorman boys started to move the hay while preparing for a barn dance. The Large boy

said the still belonged to his father and had been there for some time.

The defendant, in his fifth assignment, alleges misconduct of the county attorney in asking the following questions of the witnesses testifying for the defendant, in which questions he insinuated the defendant had pleaded guilty when such was not the case. While cross-examining the witness Pat Penny, the county attorney propounded the following questions:

"Q. Did you know he had been making whisky out there?"

Which question was objected to by the defendant, and Mr. Horton, the county attorney, said:

"The testimony of the sheriff is that he did admit to having whisky out there."

This statement was objected to by the defendant and the court sustained the objection.

"Q. Do you know when he was arraigned on this charge he first plead guilty?"

This was objected to and the objection of the defendant was sustained. In rebuttal the state attempted to contradict the witness Pat Penny, and the Dorman boys, as to there being any baled hay in the loft, and the witness would only answer that if there was any baled hay they failed to see it; they admit there was kaffir corn hay, or some other kind of hay in the loft.

It is urged by the defendant that the court erred in permitting the state in rebuttal testimony of W. F. Beltknap, when the following questions and answers were given:

"Q. Did you make a report in this case? A. Yes, sir."

This was objected to by the defendant, objections were overruled, and exceptions allowed.

"Q. I hand you what has been identified as Exhibit 1, and ask you to state what it is? A. That is a report on the search made at the Neely place on June 26, 1935. Q. When did you make that report? A. On the 27th of June, 1935."

This was objected to, overruled, and exceptions allowed. It is urged by the defendant with considerable force and justification that the testimony herein complained of by the defendant deprived him of having a fair and impartial trial as guaranteed to him by the Constitution of the United States, and the state of Oklahoma (Const. U. S. Amend. 6; Const. Okla. art. 2, § 20). With this contention we fully agree. This court has often held that it was improper for the county attorney to propound questions to witnesses on cross-examination indicating the defendant had committed other crimes unless he follows it up by offering proof tending to establish the facts he had inquired of the witness on cross-examination, and which had been denied by the witness.

Impeaching questions should not be propounded to a witness unless they are based on facts that the interrogator intends to present in refutation of adverse answering to the questions propounded. Such line of questioning should be done in good faith and not for the purpose of prejudice or arousing suspicion of the jury against the defendant. Klaassen v. State, 39 Okla. Cr. 402, 404, 266 Pac. 495.

In Cook v. State, 36 Okla. Cr. 285, 253 Pac. 1029, 1031, the court stated:

"It is an abuse of judicial discretion to allow questions to a witness which are manifestly calculated to

create prejudice in the minds of the jury against the witness, and, if he be the defendant, influence them to find against him because of such prejudice."

In this case there can be no question but the questions propounded to the witness Penny regarding the question of the sale of whisky, and of the defendant having first pleaded guilty to it, were asked for the purpose of creating prejudice in the minds of the jury against the defendant. The county attorney knew at the time he propounded the questions, or should have known, he had no testimony to contradict the witness if he answered the questions in the negative.

It is further contended that the question about the report of the officer having made the search was improper, and was not only improper but immaterial, as there was no question raised and no dispute that the search had been made. This was offered by the state for no other purpose than to attempt to create in the minds of the jurors bias and prejudice against the defendant.

In Smith v. State, 14 Okla. Cr. 348, 171 Pac. 341, 346, this court said:

"We are of the opinion that the cross-examination objected to was improper and highly prejudicial to the defendant, and the action of the special prosecutor in asking such questions constituted misconduct on his part. The obvious purpose and the undoubted effect of such course of cross-examination was to degrade the defendant and prejudice the minds of the jury against him, and the rulings of the trial court in permitting the same and compelling the defendant to answer such questions constitutes prejudicial error."

In Appleby v. State, 11 Okla. Cr. 284, 146 Pac. 228, 229, this court in part said:

"The repeated asking of incompetent questions, which clearly have for their purpose the intimation of something to the jury that is either not true or not capable of being proven if true, is wrong, and such conduct of counsel is not cured because the court sustains objections to the questions."

Further on the court said:

"In jury trials incalculable harm is often done by counsel in asking known incompetent questions in the hearing of the jury and thereby forcing the adverse party to object to them also in the hearing of the jury, which manifests a fear of the incompetent questions, and gives emphasis to the harmful matter they are supposed to contain."

It is true that great latitude should be allowed attorneys in cross-examining witnesses, but their questions should not contain insinuations that the defendant is guilty of some other crime.

In Watson v. State, 7 Okla. Cr. 590, 124 Pac. 1101, this court said:

"When the record discloses that counsel for the state, in the prosecution of a person charged with crime, has been guilty of conduct calculated to arouse the prejudice or passion of the jury and prevent the accused from having a fair and impartial trial, a conviction had should be set aside by the trial court, and a new trial awarded."

There are other cases wherein this court has passed upon the question, but we do not deem it necessary to quote any more opinions. In this case it is difficult to tell just how far the jury was influenced by the questions asked by the county attorney, which questions were answered in the negative, and the county attorney offered no proof to contradict or impeach the witness. A person accused of crime is entitled to a fair and impartial trial

conducted according to established principles of law, the most important of which is, the verdict of the jury should be founded only upon competent evidence. If the defendant cannot be fairly convicted, he should not be convicted at all, and to hold otherwise would provide ways and means for the conviction of the innocent.

The testimony in this case on behalf of the state fails to connect the defendant with the still found in the barn loft on the premises where he was living. The testimony of the landlord and other witnesses shows conclusively that the still had been in the barn loft for some time and belonged to another party. No officer saw the defendant exercising any ownership or possession over the still. On the contrary, the evidence shows it was not the defendant's still, and that he had never exercised any ownership or control over it.

In view of the insufficient testimony as to the possession of the still, and because of the action of the county attorney in asking insinuating questions of the witnesses on cross-examination which tended to prejudice the minds of the jurors against the defendant, the judgment of the trial court is reversed.

DOYLE, J., concurs. EDWARDS, P. J., not participating.