## O. E. "STEVE" HAMILTON v. STATE.
No. A-10319.    Sept. 27, 1944.
(152 P. 2d 119.)

Brown & Cund and Jerome Sullivan, all of Duncan, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for defendant in error.

JONES, P. J.    The defendant, O. E. "Steve" Hamilton, was charged by information filed in the district court

of Stephens county with the larceny of a cow; was tried, convicted, and sentenced to serve three years in the State Penitentiary, and has appealed.

In order to properly consider the assignment of errors presented in defendant's brief, it is necessary to make a short review of evidence.

C. W. Best testified that he lived in Duncan, about a block and a half from defendant; that he owned a motley faced cow which he kept tied to a tree west of the house, that the cow was stolen between the 12th and 14th of January, 1942; that it was later recovered at Marion Taylor's, about 15 miles northeast of Duncan, approximately three weeks after the cow had been stolen.

Elmer Zigler, sheriff, and W. L. Dixon, deputy sheriff, testified to substantially the same facts. That is, that they were notified of the theft of the Best cow; that they located the cow the latter part of January at Marion Taylor's place; that this place was rough and wooded, and about two miles off any public, traveled road; that the cow was in a lot with another stolen cow belonging to Tom Hayes; that the defendant was arrested and told them that a certain cow he had sold in Lawton, at the community sale, was obtained by him from Marion Taylor.

J. W. Litton testified that he operated a sales barn at Lawton; that on January 13, 1942, a yellow Jersey cow was sold through his auction sale for $44.13; that the cow had been checked in at the sale by Steve Hamilton, and he introduced in evidence a check in the sum of $44.13, issued to Steve Hamilton and endorsed by him in payment of the cow.

Donald Taylor testified that he was 16 years old, and the son of Marion Taylor; that the farm on which they lived belonged to Steve Hamilton's parents; that early in

the morning before daylight, on January 13, 1942, the defendant and Carl Maloney came to his house in a red pick-up truck with a motley faced cow and put her in the lot; that it was the same cow that Mr. Best and the sheriff later took away; that when the defendant and Carl Maloney left there, they took with them his father's cow.

Carl Maloney, who was jointly charged with the defendant, testified that he and the defendant were good friends; that the defendant wanted to buy a pick-up truck, but the automobile people would not handle the papers for him, so the witness bought the pick-up and the defendant paid the $45 down payment on the pick-up; that about midnight of January 12th the defendant came to him and told him that he had a cow chained in his backyard and defendant wanted him to come along with the pick-up and help him haul the cow out to Marion Taylor's; that the defendant said the cow was loose and came to his place after dark and he had chained her in his backyard; that after talking to the defendant, the witness went over to the defendant's house and stayed until about 2 a. m.; that they, then, left and drove to the Taylor place and sat in the truck for quite a while waiting for daylight; that there was nobody at the Taylor house except the Taylor children; that as quickly as daylight arrived, they unloaded the Best cow at Taylor's and took the Taylor cow to Lawton; that the defendant sold her and came back and told him that the cow brought $40; that defendant gave him $20 for his part of the job. The witness admitted that he had served a term in the penitentiary for burglary.

On behalf of the defendant, Cecil Teague testified that he was a cab driver in Duncan; that he stayed all night with the defendant the night of January 12, 1942; that early the next morning, Carl Maloney came by in a

pick-up truck and asked him and the defendant to go with him out in the country; that Maloney had a cow in the pick-up; that the defendant went with Maloney, but he did not go.

The defendant testified that he was 24 years of age and had lived in Duncan all of his life; that he was well acquainted with Carl Maloney and had loaned him money at different times; that he had loaned him money to make a down payment on the pick-up which Maloney drove; that about 4:30 or 5 o'clock a. m., on Tuesday, January 13th, Carl Maloney came by his house driving the pick-up with a cow loaded in the pick-up; Maloney asked the defendant to go with him to Marion Taylor's; that Maloney stated he had traded cows with Marion Taylor, and he went along with Maloney; that they left the cow which Maloney had in the pick-up at Taylor's place, and took the Taylor cow, but after they left Taylor's place, he bought the Taylor cow from Maloney for $40 and took her to the auction sale at Lawton, and sold her there as testified to by the witness Litton. The witness further testified on direct examination that he had never been arrested nor convicted of any crime, except that he had been arrested upon investigation in connection with the drowning of a boy in Comanche. On cross-examination, the record discloses the following:

"Q. I will ask you if you haven't got a case pending for stealing a mare? Mr. Brown: We object to that as incompetent, irrelevant, and immaterial, and ask the court to instruct the jury not to consider it. By the Court: Sustained as to anything that transpired after this charge was filed. Mr. Brown: Exceptions. By Mr. Marmaduke (c.m. 65): Q. You say that is the only time you have ever been with Carl? A. On a cow deal. Q. How about the mare deal? Mr. Brown: We object to that as incompe-

tent, irrelevant, and immaterial. By the Court: Sus-. tained."

It is first insisted that the county attorney was guilty of prejudicial misconduct by reason of the two questions asked on cross-examination, as shown above. The first question above quoted in which the county attorney asked the defendant if he didn't have a case pending for stealing a mare was improper. However, there was some foundation for the asking of the second question by reason of the fact that the defendant had testified that he had never been with the codefendant Maloney at any other time, except in connection with the delivery to the Taylor farm of the Best cow. This appears to be another one of those cases where a county attorney almost gets into deep water by his superheated desire to convict the defendant. The state made out a clear case of guilt. No reasonable juror could have done other than find the defendant guilty under this record. The questions asked by the county attorney apparently did not affect the decision of the jury because they only returned the minimum punishment of three years' imprisonment in the State Penitentiary. The record discloses that the codefendant Maloney, who testified for the state, entered a plea of guilty with the understanding that the county attorney would recommend seven years in the State Penitentiary. All this was before the jury.

We have stated in many decisions that the repeated asking of improper questions for the purpose of prejudicing the jury against the defendant would constitute reversible error.

In the case of Cook v. State, 36 Okla. Cr. 285, 253 P. 1029, 1031, it is stated:

"It is an abuse of judicial discretion to allow questions to a witness which are manifestly calculated to cre-

ate prejudice in the minds of the jury against the witness, and, if he be the defendant, influence them to find against him because of such prejudice." See, also, Appleby v. State, 11 Okla. Cr. 284, 146 P. 228; Watson v. State, 7 Okla. Cr. 590, 124 P. 1101; Weitz v. State, 70 Okla. Cr. 35, 104 P. 2d 445.

The above two questions asked by the county attorney were the only ones which were the least bit objectionable to defendant's counsel. The rest of his examination was perfectly proper and no objections were made to any other questions. After considering the nature of these two questions in connection with the other evidence, and the fact that objections were promptly sustained to the questions, it is our conclusion that they were not of such a prejudicial nature as to require a reversing of the judgment of conviction.

It is next contended that the court erred in not striking from the consideration of the jury the testimony of the witness J. W. Litton, for the reason that the evidence of this witness was wholly irrelevant and immaterial to the issues.

It was the theory of the state, sustained by the evidence, that the defendant took the Best cow to Taylor's place and then took the Taylor cow to Lawton to the public sale. Litton's testimony concerned the sale of the Taylor cow by the defendant. It appears that Litton's testimony tied in with the evidence offered by Donald Taylor, and certainly is in corroboration of the testimony of the accomplice, Carl Maloney. This evidence was material to show all of the connection which the defendant had with this transaction. The defendant, Hamilton, admitted in his testimony that he was the person who sold the Taylor cow and tried to explain his connection. The evidence of the witness Litton was admitted without objection, and

it was only at the close of his testimony that counsel moved that it be striken from consideration of the jury, for the reason that it was wholly irrelevant and immaterial and did not tend to prove or disprove any issue in this case. The court properly overruled the motion.

Lastly, it is contended that the evidence is insufficient to sustain the conviction, it being argued that the only evidence supporting the conviction is the testimony of the accomplice, and that there is not sufficient corroborating testimony. The corroborating evidence of the state showed defendant transporting the stolen cow to the farm of his parents in the night-time, under circumstances which were very peculiar and which were never satisfactorily explained by the defendant. We have held in many cases "where there is evidence in corroboration of an accomplice, tending to connect the defendant with the commission of the crime charged, the sufficiency of such corroborating evidence is for the jury." Haas v. State, 37 Okla. Cr. 335, 257 P. 1115; Hathcoat v. State, 71 Okla. Cr. 5, 107 P. 2d 825.

We think under this record that the defendant would have been convicted without any testimony of the accomplice. His possession of the stolen cow, his admissions made to the officers, his confusng explanation as to his connection with the Taylor cow were all circumstances tending to show his guilt and are sufficient to sustain the judgment of conviction. The explanation of his possession and transportation of the stolen cow merely raised an issue for the determination of the jury.

Under the record, as we view it, we find no error of sufficient importance to require a reversal of the conviction. The judgment is affirmed.

BAREFOOT, J., concurs. DOYLE, J., not participating.