TAYLOR v. STATE.

No. A-11068. Jan. 4, 1950.

(213 P. 2d 588.)

284

Cecil E. F. Robertson, Muskogee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J.   The defendant, Ed Taylor, alias Ed Shirley, was charged in the district court of Muskogee county with grand larceny, was tried before a jury, convicted, and the jury being unable to agree upon the punishment, left same to be fixed by the court, and the court thereafter entered judgment sentencing the defendant to be imprisoned in the penitentiary at McAlester, Okla., for the term and period of four years.   Appeal has been perfected to this court.   The petition in error enumerates nine assignments of error.   By reason of the manner of presentation, we find that for a proper consideration a summary of the evidence is here necessary.

Miss Cecile McDaniels testified that she was employed by Kaplan & Wilcoxen Jewelry Store, Muskogee, and that on August 8, 1947, at about 11 o'clock in the forenoon, a colored man came into the store to look at some rings; that he was holding some money in his hand and wanted to see a black tray of rings that he stated he had seen a few days before. He wanted a ring for his wife. The tray contained expensive rings. The man did not purchase, and while he was still in the building Miss McDaniels missed a $600 diamond ring. The manager of the store was in Tulsa, and she called the other girl who worked there to find out if she had sold the ring, and she had not. They thought Mr. Kaplan, the manager, had taken the ring to Tulsa, but he returned later that day and they found that he had not removed the ring, and the loss was reported to the police. A description of the ring was given, and also a description of the colored man who was present when the ring was missed. Eventually the officers recovered the ring and it was returned. Witness identified one Walter Giles, a colored man and witness for the state, as the man who had examined the tray of rings and who was in the store when she missed the ring in question. Witness had never before to her knowledge seen the defendant, Ed Taylor.

Walter Giles next testified, stating that his home was Kilgore, Texas, when he was "out", meaning out of the penitentiary; that he had been convicted six times on felony charges; that he was then serving a five-year sentence for grand larceny, after conviction in Garfield county; that he had known the defendant Taylor for about a year; that Taylor drove in a car from Dallas to Kilgore and got him and they drove to Muskogee. Concerning this he stated:

"Well, we came here to Muskogee one morning. I think it was on Saturday morning if I am not mistaken in the morning, and he furnished me the money, and I was in the car with him and I got out of the car right in front of Kress' store, and I walked across the street by the bank and I came up about three or four doors down and there was a jewelry shop there and I went in and I stole the ring from the girl. It was worth $600 and I went back to the car and told Ed, 'Come on, let's go. I am hot.' Q. He stayed in the car? A. Yes, he stayed in the car. I said, 'I am hot, let's go' and we went on down there and we got to Haskell or some little town and we taken the left hand road to go back to Texas. Q. What became of the ring that you stole from this young lady? A. I gave it to Ed Taylor. Q. This man here? A. Yes, sir, and we went to Dallas, Texas, and he carried it to a white man and he sold it. Left it there on Sunday night and Monday morning he went back and the white man paid Ed Taylor for it. I saw the white man, but I didn't have no dealings with him. He didn't want to have no dealings with me because I didn't know him. The next morning he gave me my part of the money which was $70, seven $10 bills."

Witness further testified:

"He went in there and knocked on the door. He said 'Who is that?' and he said 'Ed Taylor' and he went in and stayed about 30 or 40 minutes."

Witness stated that they did not get the money for the ring until the next morning. The witness was asked:

"Q. State whether or not there was any agreement between you and him that you was to work this kind of racket, the kind you have told about here? A. That is right. Q. Did you pull off any other, soon after that? A. Yes, sir, I did, one time. Q. Where was that? A. Enid, Oklahoma. Q. At Enid, Oklahoma? A. Yes, sir."

He further stated that he was then serving time for that theft. He also stated that Taylor did not know that

he had stolen the rings at Enid, and stated that he did not know whether he would have given Taylor part of the money he would have gotten for the rings or not. He stated, however, that Taylor knew what he was going in the store for. He testified that on the way back to Texas he and Taylor were arrested at Chickasha, and taken back to Enid, the officers there had his stomach X-rayed and the two rings he had swallowed showed up in the picture, and that he was given castor oil and the rings were recovered. Giles took the blame and Taylor was released.

Paul McQuillan, detective in the Muskogee Police Department, testified that about August 8, 1947, a lady clerk in Kaplan's Jewelry store, being the one who had just testified (Miss McDaniels), reported the theft of a ring. Mr. Ryser was assigned to make an investigation, and later witness went to Dallas, Texas, with Mr. Ryser and they recovered the missing ring at a pawnshop there. He further testified that the defendant, Ed Taylor, went with them to a grocery store in Dallas, and told them in the presence of the grocer about the ring and that the grocer stated in defendant's presence that he had purchased the ring from defendant.

Fred Ryser testified that he was a detective in the Muskogee Police Department, and testified substantially as McQuillan, but more in detail. He testified that he and McQuillan went to the Police Department in Dallas and that a detective accompanied witness, McQuillan and the defendant, Taylor, to a pawnshop in Dallas where the ring stolen from the Kaplan & Wilcoxen Jewelry Store was found. That the pawn-broker told them he got the ring from an Italian, one Scalise, a grocer, and that Scalise in the presence of Taylor told them he

purchased the ring from Taylor. Ryser was called as a rebuttal witness, and further testified:

"Q. The defendant here, when you went down there, did you have him arrested by the police there? A. Yes, sir. Q. Just tell how he came to make a statement and how you happened to go out there? * * * A. Paul Mc-Quillan and a man named Bob Abbott, a detective there at Dallas, arrested the defendant at his home and took him to the Police Department there in Dallas. I questioned him in regard to the ring and he volunteered and said that he would take us to the man that he sold the ring to, and that is what we did."

He further stated that Taylor voluntarily took him to Scalise's store, and that they did not suggest where they were to be taken.

Sheriff Tennyson of Garfield county testified that the defendant and Walter Giles were together in Enid, Okla. He stated:

"My experience with them was on the 23rd day of August. I issued a pick-up for a car with two negro men and two negro women in it who were suspected of taking some rings out of a jewelry store there and we picked them up near Chickasha and I went down there and brought them back to Enid."

He further testified that he found four price tags off of rings in the car, and that on the following Friday after pick-up notice that he recovered two rings that Giles swallowed; that he had X-ray pictures made of the stomachs of both Giles and Taylor, and charges were filed against both men, but Giles claimed Taylor did not know about the rings and the charge was dismissed as to him and he was released, but a few days after this the Muskogee officers appeared in Enid investigating the Muskogee theft. Giles was sentenced to serve five years in the penitentiary.

The court permitted the introduction in evidence, for the limited purpose of corroboration of the testimony of Walter Giles, the X-ray picture of Giles stomach, showing two rings, and also the ring tags found in defendant, Taylor's, car.

For the defense, counsel for defendant introduced the deposition of Charles Scalise taken in Dallas, Texas, who stated that he was engaged in the grocery business at Dallas. He testified that he knew the defendant Ed Taylor and had known him for two years; that he did not know Walter Giles by name, but that he purchased from him a diamond ring, one and a quarter karat with 28 small diamonds around it; that he paid him $100 for it. He denied that Taylor had been present or had advised with him. He claimed that he did not tell the officers who sold him the ring. He stated that he resold the ring and that he had to re-purchase it for the officers.

The defendant Taylor testified that he had lived in Dallas 21 years; that he ran a cafe; that he and Walter Giles met at Kilgore, Texas, in a Scotch ball game, a gambling game, and that he went to McAlester to see about putting in a game, Giles accompanying him, and stayed there one night and then drove to Muskogee and parked in front of the Kress store, and that he went to get some postal cards and Giles was gone about 45 minutes and came back and said: " 'Well, are you and the girls ready to go?' I says, 'Yes, I am ready', so he said, 'Let's go' ", and that they headed for Wichita Falls by way of Tulsa and Enid, and that they were accompanied by Giles' wife and her sister; that they were arrested at Chickasha after visiting in Enid, and returned to Enid, and both were charged with stealing some rings at Enid, but that he was released. He further testified that he

did not know that Giles had swallowed two rings or had stolen any rings at Enid. He denied disposing of the ring stolen at Muskogee and his testimony was contrary to most of the testimony of the state's witnesses. Defendant admitted that he had served in a Federal penitentiary for passing counterfeit money.

For reversal, counsel for defendant sets out nine assignments of error, which are intermingled in argument, some not being argued, and being:

"1. The court erred in its decision of questions of law arising during the course of the trial.

"2. That the court erred in admitting incompetent, irrelevant and immaterial evidence over the objection of the plaintiff in error.

"3. The court erred in overruling the demurrer of plaintiff in error to the evidence.

"4. The court erred in overruling the motion of plaintiff in error for a directed verdict.

"5. The court erred in overruling the motion of plaintiff in error for a new trial.

"6. The court erred in refusing to give the following requested instructions to the jury; defendant's requested Instructions Nos. 1 and 2.

"7. That the verdict of the jury was contrary to and in disregard of the evidence.

"8. The verdict of the jury was contrary to and in disregard of the instructions of the court.

"9. That the punishment inflicted upon the plaintiff in error was excessive."

Counsel for defendant points out that Walter Giles, in testifying for the state and concerning the rings stolen at Enid, replied to questions by the county attorney as follows:

"Q. Was Ed [the defendant] with you that time? A. Yes, sir. Q. You didn't dispose of that ring? A. No, he didn't know anything about them. Q. He didn't know anything about you getting them? A. He knew I had them but I was aiming to swallow them. Q. Wasn't you going to give him part of the money for which you sold them? A. I don't know whether I would or not. Q. Well, you told me and Chal Wheeler, the other assistant county attorney, and Fred Ryser and Paul McQuillan in the presence of Ed Ragsdale, the deputy sheriff back there, not over 30 or 40 minutes ago he was in with you, that he went there with you to Enid and stayed in the car while you went in and got the rings and you intended to divide with him after you sold it? A. With Ed,—we went together— Mr. Robertson [counsel for defendant]: I object to this line of testimony. He is impeaching his own witness. The witness has testified that this man knew nothing about that, and he puts the words in his mouth, and I object to that, your Honor please. The Court: Well, the witness, as I recall, said he didn't know whether he would divide with him or not."

Following this, the county attorney claimed surprise, and the attorneys argued over just what the witness had said, and the court overruled the above objection. Defendant claims prejudice by the question propounded by the county attorney, and the statement of the court.

The answer of the witness appears to have been interrupted by the objection and to not have been fully and clearly answered. However, following this the attorney for the defendant cross-examined Walter Giles, and brought out that three or four days after Giles was incarcerated at McAlester, Muskogee officers came over and got him and took him to Muskogee, and talked to him there and not at McAlester.

"Q. What did they tell you? A. They never told me. They didn't ask me anything more than they identified me. They didn't talk about the case at all. He ask-

ed me what I knowed about it and I told him what I knowed about it. I told them I stole the ring and gave it to Ed Taylor and he carried it to Dallas, Texas, and sold it to a white man. Q. That is what you told the officers here in Muskogee? A. Yes, sir. Q. Did they ask you about the ring you stole at Enid? A. No, sir. * * *. Q. After you were arrested in Garfield county, did the sheriff talk to you about the theft of the ring at Enid? A. Yes, sir. Q. What did you tell the sheriff? Did he ask you if you were the only one in the theft? A. What do you mean? Q. I mean, were the only man concerned in the deal, did he ask you? A. I told him me and Ed were together. Q. You told the sheriff that? A. Yes, sir, I told him that me and Ed was together. Q. And at that time Ed was already arrested? A. Yes, sir, he was arrested. Q. You told the sheriff Ed knew about it? A. Yes, sir, I told him we was together. Q. Where did you go from Enid? A. Where did I go from Enid? Q. Yes, sir. A. We tried to go back to Texas but we was caught at Chickasha. Q. And then you was carried back there? A. Yes, sir. Q. And then you plead guilty? A. Yes, sir. Q. Did they file any charge against Ed, do you know? A. I plead guilty. Q. Against Ed? A. I don't know. I know I plead guilty. I had them and they found them in me."

While the form of the question propounded the witness Giles by the county attorney is not approved, yet when the witness expressed doubt as to whether he was going to divide the money from the eventual sale of the Enid rings with Taylor, that question was never clearly answered, and the county attorney, after the question was propounded and objection made, argued surprise. And from the testimony it is apparent that he was surprised, but he did not pursue the question, and the defense attorney seemingly avoided the specific inquiry on cross-examination.

Defendant contends that the evidence concerning the Enid theft was inadmissible on the ground that it was

committed by Giles without the aid or knowledge of defendant. It is true that the defendant denied knowledge and that much of the evidence is disputed, and that Giles expressed doubt as to whether he would have divided the proceeds of the sale with Taylor, and did at one point state that Taylor did not know anything about the Enid rings, but that statement was modified both on direct and on cross-examination. Concerning the credibility of the witness: That Giles and the defendant had both served in the penitentiary is undisputed. Also, that Taylor furnished the car and drove over a hundred miles to get Giles for his Oklahoma trip or trips, is undisputed. That Taylor sat in the car and was available for the get-away after the theft by Giles, is apparent. That the parties were in Muskogee and the theft there was on August 8, 1947, is undisputed; and that the rings at Enid were not stolen until August 23, 1947, is undisputed. From defendant's testimony, he, Giles and the two women made but one trip to Oklahoma, driving from Muskogee to Enid by way of Tulsa. On that trip Giles was placed in jail and Taylor returned to Dallas, and under such facts Giles could not have disposed of the Muskogee ring. But Giles testified that he and Taylor drove on to Dallas immediately after the Muskogee theft, and the lapse of time would so indicate. But even so, the pattern for the thefts was the same.

We conclude that there was ample evidence adduced by the state for the jury to infer from the circumstances that defendant was implicated in the commission of the crime in Garfield county. Whether the defendant was an accomplice in the commission of said crime was a question of fact for the jury to determine from the entire evidence in the case. Such fact having been established, it then became competent for the state to prove the com-

mission of a crime other than the one for which the defendant was on trial, for the purpose of showing the plan or scheme by which they were operating, or that same was a part of the res gestae.

In the case of Smith v. State, 83 Okla. Cr. 209, 175 P. 2d 348, 349, this court held:

"It is the general rule * * * that * * * evidence of other crimes, either prior or subsequent to the alleged offense, is inadmissible.

"To the general rule that the admission in evidence of other crimes, either prior or subsequent to the alleged offense is inadmissible, there are, however, certain, exceptions which are as well recognized as the rule itself, as, where the evidence tends directly or fairly to prove guilt of the crime charged, or to connect one with it, or where the crime charged and other offense are closely related or connected; or where such testimony is for the purpose of showing that it was a part of a system or common scheme or plan; or when proof of a separate offense is explanatory of the motive or intent of the offender in the commission of the offense charged."

This rule has been adhered to in many cases decided by this court, including: State v. Rule, 11 Okla. Cr. 237, 144 P. 807; Boyer v. State, 68 Okla. Cr. 220, 97 P. 2d 779, and Zewalk v. State, 73 Okla. Cr. 202, 119 P. 2d 874.

Photographic evidence of the stomach of Giles showing two rings, one identified as having been stolen at Enid, and the other not then identified as to ownership, was introduced, as was a photograph of price tags off of rings found in defendant, Taylor's, car at the time he and Giles were arrested for the Enid theft. These photographs were introduced for the sole purpose of corroborating the evidence of the accomplice Giles. There being other evidence and circumstances for the consideration of the jury tending to connect the defendant, Taylor,

with the commission of the Enid thefts, and to show that he was aiding and abetting Giles and that he drove to Oklahoma for such purpose, we conclude that it was not error to admit the photographs in evidence for the limited purpose for which admitted. Under the facts brought out, we do not see where this could have constituted reversible error.

Counsel for defendant urges that the trial court should have sustained his motion for a directed verdict of not guilty, contending that the testimony of the accomplice Giles was not sufficiently corroborated to convict defendant of the commission of the crime charged. The statutory rule involved, and being Sec. 742 of Title 22 O.S.A. 1941, reads:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

This statute has been construed many times, a fairly recent case being Rushing v. State, 88 Okla. Cr. 82, 199 P. 2d 614, 615, wherein this court held:

"Evidence corroborative of an accomplice need not directly connect the defendant with the commission of the crime; it is sufficient if it tends to connect him with its commission.

"Evidence corroborating an accomplice and tending to connect the defendant with the commission of the crime need not be direct, but may be circumstantial only.

"Where there is evidence in corroboration of an accomplice tending to connect a defendant with the commission of the crime charged, the sufficiency of such corroborating evidence is for the jury.

"Where the sufficiency of the evidence to corroborate an accomplice is challenged, this court will take the strongest view of the corroborating testimony that such testimony will warrant, and, if it can say that there is corroborating evidence tending to connect the defendant with the commission of the offense, it will uphold the verdict."

See, also, Blumhoff v. State, 72 Okla. Cr. 339, 116 P. 2d 212.

The defendant next contends that the trial court erred in refusing to give defendant's requested instructions Nos. 1 and 2.

Requested instruction No. 1 related to the question of what constitutes a principal to a crime. The statutory definition, Tit. 21 O.S.A. § 172, reads:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

Defendant's contention that there was not sufficient evidence to constitute the defendant a principal is refused by the evidence recited, which, though conflicting, was sufficient for submission of questions to the jury, and was by the jury resolved in favor of the state and against the defendant. The case is readily distinguishable from Smith v. State, 66 Okla. Cr. 408, 92 P. 2d 582, Anderson v. State, 66 Okla. Cr. 291, 91 P. 2d 794, and other cases by defendant cited.

The requested instruction No. 1 was in part contrary to the above statute defining principal, and the subject was covered by instruction No. 4 given. We do not deem it error that the court refused to give defendant's requested instruction No. 1. See Wheeler v. State, 66 Okla. Cr. 127, 90 P. 2d 49. We do not, however, ap-

prove the instruction given as a model instruction. In fact, it is a very poor one, but after an examination of the entire record, we are convinced that the refusal to give the instruction requested and the giving of the instructions, as given, did not result in a miscarriage of justice, and are convinced that the defendant has not been deprived of a constitutional or statutory right. See Tit. 22 O.S.A. § 1068, and Hall v. State, 80 Okla. Cr. 310, 159 P. 2d 283.

Requested instruction No. 2 reads:

"Gentlemen of the jury, the court instructs you that if you believe from the evidence that the defendant, Ed Taylor, had no part in planning the crime charged in this case, and took no part in its commission, but that after the ring was stolen, the defendant, Taylor, was advised of the theft, and that he helped to dispose of the stolen property, he was not a principal in the theft, and you should discharge him."

The record shows that the defendant denied having received the stolen property or that he had any part in disposing of it, or any knowledge of the theft. His entire defense was that he was in no way implicated with Giles in the theft of the ring, and he denied receiving any part of the proceeds of sale. The issue covered by the proposed instruction was not raised by the evidence, and hence the defendant was not entitled to the instruction requested. Moore v. State, 75 Okla. Cr. 222, 130 P. 2d 114.

The judgment of the district court of Muskogee county is, therefore, affirmed.

JONES, P. J., and BRETT, J., concur.