## WOODY v. STATE.

No. A-11506. Nov. 28, 1951.

(238 P. 2d 367.)

Hunt, Johnson &· Fore, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and James P. Garrett, Asst. Atty. Gen., for defendant in error.

POWELL, J. Cleveland Doss Woody was charged by information filed in the district court of Oklahoma county with ·the commission of the crime of "Crime against nature", was tried before a jury, convicted, and the punishment left to be fixed by the court, who assessed punishment of five years imprisonment in the State Penitentiary and costs of prosecution. The case is here on appeal.

The state used three witnesses. The defendant did not testify, and offered no evidence.

George E. Bailey, police detective with the Oklahoma city police department, juvenile division, testified that he investigated the case at the request of the principal of the Douglas High School, which is a high school for negroes, at Fifth and High Streets, in Oklahoma City. As a result of Officer Bailey's investigation the charge against the defendant was filed.

Van Osborne, custodian at Douglas High School, testified that he was so employed on the night of January 31, 1950; that on the evening of said day an adult night school was .being conducted and that there was also a basketball game .in progress; that it was his duty to make certain rounds of the building and particularly to see that an east door was locked, especially when a basketball game was in progress. The lock on the east door in question could be unlocked from the inside, but not from the outside. This door opened into an outside recessed entrance. In checking the door witness saw through the glass panel some object standing outside, it looked tall· and peculiar, and witness

stood and watched for a few minutes, and then yanked the door open and the defendant Woody ran past witness into the building. Woody was wiping his mouth; and a young fifteen-year old boy, Herbert Hopkins, was standing on a window jack, or wooden block at an elevation of two or two and a half feet off the floor and was trying to fasten his trousers and clothing over his penis. He had not gotten off the block. Witness had immediately decided what was going on, and stated that he severely lectured the boy, and it is significant that this was without protest or denial from him. Witness further stated that about five minutes after this he saw the defendant in the wash room washing his hands and face. There was no one else around while all this was going on. The figures observed by witness could have been no other than Woody and Hopkins. Witness immediately reported the matter to the principal of the school, who called in the police detective to make an investigation, with results as stated.

Herbert Hopkins testified that he was fifteen years of age; that he was a student in 10B grade, that he knew what it meant to tell the truth; that he lived with his mother; that on the night of January 31, 1950, he saw the defendant Woody at the Douglas High School; that he had known him since in 1949; that Woody asked him to go up on the third floor with him and that he did so, and found two boys up there boxing and playing, so they did not stay there long; that defendant asked witness to go to the east side entrance to the building. Defendant went down first and witness found him inside the door and they went outside the building and defendant lifted witness up on a block of wood, then went to the edge of the building to see if anyone was around, came back and unbuttoned the front of the pants of witness and took out his privates, and proceeded by mouth "to go to work" with unnatural relations, too revolting to further detail. The record fails to disclose the age of the defendant, but he was large and strong enough to lift witness up on to the wooden block. Witness testified to two previous unnatural acts with the defendant, but the court on objection of counsel for the defendant, apparently out of an abundance of precaution, struck such testimony and admonished the jury not to consider the same.

In this connection, it should be noted that the crime charged, where committed, by statutory provision constitutes a crime regardless of whether the victim consented or did not consent. As was said in Morris v. State, 9 Okla. Cr. 241, 250, 131 P. 731, 734, involving the sex crime of rape:

"We think the correct rule is that, in a prosecution for 'statutory' rape, evidence of other acts of sexual intercourse between the same parties is admissible, including evidence of acts committed subsequent to the particular act relied upon for conviction, even though it proves other and distinct offenses as relevant to show the true relation of the parties to each other, and to characterize and explain the act for which the defendant is on trial. *It is the general desire to satisfy lust that is involved in this class of cases, and this character of evidence tends to show lustful desire and disposition by showing continuousness of the illicit relation.* However, the limits of time over which evidence of this kind may range is largely within the legal discretion of the trial court." (Emphasis now supplied.)

It is our conclusion that the reason given for the rule in a case involving rape is equally applicable in a case involving sodomy. The Supreme Court of Oregon had reached a similar conclusion in the case of State v. Young, 140 Or. 228, 236, 13 P. 2d 604. The court distinguishes this case from State .v. Start, 65 Or. 178, 132 P. 512, 46 L. R. A., N. S., 266.

Although, in the within case, the court struck the question as to other similar acts when the question was propounded by the county attorney on direct examina-

tion, nevertheless counsel for defendant proceeded to open up this subject again on cross-examination, and witness denied that anyone else had ever sucked his penis before, but reiterated that the defendant had done so on two previous occasions.

For reversal counsel urges three propositions:

First: The defendant has been convicted upon the uncorroborated testimony of an accomplice.

Second: "The trial court erred in its failure to instruct the jury that the witness, Herbert Hopkins, was an accomplice;" and

Third: "The trial court erred in its failure to instruct the jury as to corpus delicti."

The charge was filed under the provisions of Tit. 21 O. S. 1941 § 886, reading:

"Every person who is guilty of the detestable and abominable crime against nature, committed with mankind or with a beast, is punishable by imprisonment in the penitentiary not exceeding ten years."

Few cases as the within have come before this court. Though our immediate expressions may be classed as unnecessary and useless preachment or diatribe, the writer feels called on to say that a male person on whom such an abominable and pernicious act might be committed perhaps in many cases by reason of the embarrassment entailed and the thought of certain degradation in the minds of acquaintances and the public at large, regardless of his resistance to the act, would not report the same. So it may be that there have been many violations that have not been reported. At any rate, perversion is sufficiently prevelant that the moral forces of our state and Nation should "view with alarm" and become greatly concerned. The recent book "Washington Confidential"[1] presents a documented revelation of shocking and deplorable conditions in Washington, D. C., of perversion practices of persons in both high and low authority, involving both men and women, and of many nationalities. The tales rival the lustful perversions of a Lucretia Borgia and the practices of the Godless and licentious ruling class at the time of the crumbling of the ancient Roman and Greek empires. The local Washington law enforcement officers, as throughout the land, are presented as practically impotent in dealing with the matter for lack of general public knowledge and militant and unrelenting support. And while this class of case here presented is shocking, and a consideration and treatment of the facts and issues is approached with revulsion, courts, as well as officers, parents and the moral forces of this state and Nation, must not shirk the onerous task involved in such problems, if a Sodom and Gomorrah is to be forestalled.

And while punishment is no longer, in a democracy at least, administered for the sake of vengeance for the violation of the law, but rather as a deterrent[2], it would seem that conviction and punishment for sex crimes are insufficient. For a correction, do we not have the cart before the horse? The early training and active interest of parents in the child's activities and associates are the deterring influence. Too many innocent youths are unconsciously led into trying a "red bird" or "reefer', and easily follow persuasion, and then we have a likely recruit for organized crime. After a time the pervert becomes callous, may no longer recognize the criminal act as wrong, and the debauchery may even be practiced in view of the public. The only hope for the adult is for

[1] Washington Confidential, Lait & Mortimer, Crown Pub. Co.
[2] The Common Law, Chap. on Cr. Law, Holmes.

the moral forces to convert such persons to embracement of the sentiment mentioned by Rev. Dunnington in his interesting book, "Something To Stand On", where he said:

"I found evidence one day in Chicago not long ago that some one ahead of me in room 1046 in the Hotel Atlantic had been doing some straight thinking. On the back of a large envelope he or she (I wish I knew who it was!) had copied this: 'The satisfaction that derives from sensual self-indulgence sooner or later turns sour and eventually becomes satiety. The thrill dies out, the senses are dulled, the disease of self-loathing sets in. There is pleasure in exercise; in denying the body's demands so as to satisfy the wants of the intellect; in trampling on an appetite to keep faith with the high claims of conscience; in mastering the mean, the wicked and the weak thing for the sake of one's honor. Such pleasures are positive, robust, long-lived. They strengthen mind and body, they make life keener, one's tastes finer, one's range of delights wide, one's sense of joy richer.' Reading those words in Chicago that day was like a deep inhalation of pure fresh air straight off Lake Michigan. Whoever wrote them had his values absolutely straight."

To admit the task hopeless, would be to concede the doom of mankind.

Considering the case here appealed, it is apparent from the evidence that when the fifteen year old boy went to the east side door of the Douglas High School with the defendant he knew what the defendant wanted to do, and was willing, and he was therefore an accomplice irrespective of the fact of his age. Cole v. State, 83 Okla. Cr. 254, 175 P. 2d 376. In the Cole case it is pointed out that in some states it is provided by statute that children under a certain age are legally incapable of consent to the act of sodomy, and conviction may therefore be had upon their uncorroborated testimony. But we have no such statute in Oklahoma, though a person by lack of understanding due to tender age or by reason of mental unsoundness may be legally incapable of consenting to the act of sodomy. Cole v. State, supra.

And where there is no question of the victim in a sodomy case being a willing participant, and where the evidence discloses the prosecuting witness to have resisted, in such a case, this court has recognized the analogy between the crime of sodomy and that of rape, as set out in Borden v. State, 36 Okla. Cr. 69, 252 P. 446; and in a second case, Cole v. State, 84 Okla. Cr. 76, 179 P. 2d 176, 178, the rule as to the quantum of proof necessary to sustain a conviction for rape as set out in Gullatt v. State, 80 Okla. Cr. 208, 158 P. 2d 353, was recognized, and there it was stated:

"Although there is no corroboration of the prosecuting witness as to the acts committed by the defendant which constitute the abominable crime of sodomy, if this court follows the rule applied in rape cases, the conviction may be sustained upon the uncorroborated evidence of the prosecuting witness, unless such testimony appears incredible and so unsubstantial as to make it unworthy of belief." See cases cited.

From the facts developed in the within case we must conclude that it was necessary that the testimony of the youthful witness be corroborated. The statutory provision governing corroboration, Tit. 22 O. S. 1941 § 742, reads:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense, or the circumstances thereof."

The question arises as to how much corroborative evidence is necessary. As pointed out in Rushing v. State, 86 Okla. Cr. 241, 244, 190 P. 2d 828, 831:

"Excerpt may be taken from the many cases which, if construed alone, would seem to sustain the position of the state or the defendant. It is only by an examination of the particular facts in each case and the application of the law to those facts, that it may be correctly determined whether the accomplice has been properly corroborated."

At page 254 of 86 Okla. Cr. at page 835 of 190 P. 2d we further said:

"It has often been held by this court that evidence to corroborate an accomplice may be by circumstantial evidence, as well as by direct testimony. Hamilton v. State, 79 Okla. Cr. 108, 152 P. 2d 119, and cases cited therein."

See also Perry v. State, 74 Okla. Cr. 234, 125 P. 2d 219; Spivey v. State, 69 Okla. Cr. 397, 104 P. 2d 263; Wilkins v. State, 70 Okla. Cr. 1, 104 P. 2d 289; Hathcoat v. State, 71 Okla. Cr. 5, 107 P. 2d 825.

In Taylor v. State, 90 Okla. Cr. 283, 213 P. 2d 588, 595, we said:

"Evidence corroborative of an accomplice need not directly connect the defendant with the commission of the crime; it is sufficient if it tends to connect him with its commission. * * *

"Where the sufficiency of the evidence to corroborate an accomplice is challenged, this court will take the strongest view of the corroborating testimony that such testimony will warrant, and, if it can say that there is corroborating evidence tending to connect the defendant with the commission of the offense, it will uphold the verdict."

Oregon has a statute, Sec. 13-935, Oregon Code 1930, which is practically identical with our statutory provisions above quoted, and that court in State v. Young, 140 Or. 228, 236, 13 P .2d 604, 608, in construing the Oregon statute, said:

"The weight of the evidentiary circumstances relied on to corroborate the testimony of the accomplice is for the jury. State v. Brown, 113 Or. 149, 231 P. 926, 928. In that case we said: 'Much has been written concerning the sufficiency of corroborating testimony, yet no exact rule has been established for measuring the sufficiency thereof beyond the mere declaration that the corroborating evidence must tend to connect the defendant with the commission of the crime. Each case must depend upon its own peculiar facts. The reports contain many cases illustrating the sufficiency or insufficiency of such evidence. But the statute is plain, and it is the writer's opinion that little is gained by an effort to make plain that which is already plain. The language of the law of this state is concise and clear, and declares, in effect, that there must be testimony other than that of the accomplice or accomplices that tends to connect the accused with the commission of the crime.' "

This court has held that it is not necessary that the corroborating testimony be complete, independent proof of the crime, but if an accomplice's testimony is corroborated in part, the jury is then justified in believing the accomplice's entire story to be true. Wilkins v. State, supra, Henson v. State, 69 Okla. Cr. 273, 101 P. 2d 1060; Teague v. State, 64 Okla. Cr. 369, 81 P. 2d 331; Drew v. State, 61 Okla. Cr. 48, 65 P. 2d 549.

Defendant's last two propositions involve the contention that the trial court erred in failing to give an instruction that Herbert Hopkins was an accomplice, and that the trial court erred in failing to give an instruction as to corpus delicti.

The record fails to show that counsel for defendant requested the trial court to give such instructions. Counsel submitted no requested instructions, though all the instructions were excepted to. Defendant's motion for new trial fails to include as grounds the failure to give the two instructions now contended for

herein in petition in error and brief. In Fields v. State, 85 Okla. Cr. 439, 188 P. 2d 231, 233, we said:

"Where counsel for the defendant is not satisfied with the instructions given by the court and desires additional or different instructions, other than the instructions given by the court, they must reduce such instructions to writing and request that they be given, and a conviction will not be reversed where there is a failure to make such request unless the Criminal Court of Appeals is of the opinion in the light of the entire record and instructions, that, because of failure to instruct upon some material question of law, accused has been deprived of a substantial right."

Also, in Walker v. State, 89 Okla. Cr. 19, 204 P. 2d 552, 553, we said:

"Where the facts justify, the court should, as a matter of law, instruct the jury that the witness is an accomplice, and this instruction should be followed by one based on Tit. 22 O. S. 1941, § 742.

"One may waive the giving of this instruction by failure to request it." See, also, Cochran v. State, 78 Okla. Cr. 115, 144 P. 2d 751; Lee v. State, 67 Okla. Cr. 283, 94 P. 2d 5.

We have carefully examined the instructions given and find that the court did actually cover the question of corpus delicti in such instructions, and the court did instruct the jury that if Herbert Hopkins consented to the alleged crime against nature, if the jury should find that the same was committed, that he would be an accomplice, and that his testimony would have to be corroborated. And while, as stated, we think as a matter of law the evidence actually discloses Herbert Hopkins to have been an accomplice, yet the defendant effectively waived the giving of an instruction so advising the jury. The jury was permitted to decide the question, but we do not find where any substantial right of the defendant has been violated. The fact is that in studying the evidence in this case we have kept in mind the thought long ago reported as expressed by Lord Haile in rape cases, and being to the effect that, the charge made against the defendant is a charge that is easy to make, and, in the very nature of things, difficult to defend. Nevertheless, the evidence here leads to but one conclusion, and that being that in view of the rules of evidence theretofore discussed applied to the evidence that we have narrated, that the verdict of the jury is sustained by the evidence, and that the accused had a fair and impartial trial.

The judgment appealed from is affirmed.

BRETT, P. J., and JONES, J., concur.