**Miles Austin BIGSBY, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–16807.**

Court of Criminal Appeals of Oklahoma.

Oct. 18, 1971.

Don Anderson, Public Defender, Oklahoma County, for plaintiff in error.

Larry Derryberry, Atty. Gen., Nathan J. Gigger, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Miles Austin Bigsby, hereinafter referred to as defendant Bigsby, and Kenneth Hatten were charged in the District Court of Oklahoma County, Oklahoma with the offenses of Rape in the First Degree and Sodomy. The defendants were tried cojointly and at conclusion of said trial, the jury returned a verdict of not guilty in the Rape in the First Degree case, and found

the defendants guilty of the crime of Sodomy. Their punishment was fixed at five (5) years imprisonment and from said judgment and sentence, the defendant Bigsby has perfected a timely appeal to this Court.

At the trial, Gwendolyn Rucker testified that she was sixteen years old on November 13, 1970, and lived on Northeast Fourteenth Street in Oklahoma City. Defendants Bigsby and Hatten came by her home at approximately 5:30 p. m. and asked if she wanted to go with them to Ruby's, who was a friend. They went to a liquor store, then stopped briefly at the residences of two different friends then went to defendant Bigsby's house. When she refused to go into the residence, defendant Bigsby pulled her from the car and into the house. The defendant Hatten left momentarily, and defendant Bigsby demanded that she remove her clothes. She refused, and an argument resulted, wherein several blows were struck. Defendant Hatten returned and was instructed by defendant Bigsby to "get his gun because he was going to bring me back down to earth." (Tr. 17) Defendant Hatten returned with a gun and told the victim that he "didn't want to have to shoot me and for me to act right." (Tr. 17) Under the threat of the gun, she got undressed and was forced to commit oral sodomy upon the person of defendant Bigsby. Defendant Bigsby then held the gun on her, and she was made to repeat the same act with defendant Hatten. Each defendant had sexual intercourse in the normal fashion, and also in her rectum, simultaneously, defendants Bigsby and Hatten exchanging positions during the affair. The defendant Bigsby also had a knife, and told her that "if I told anyone about what happened and tried to back out on him he was going to use a knife to cut me up in my rectum and uterus, and in my face." Afterwards, the three went a distance of about four miles to Marva's house, then about a block to a beer joint where they all went in and stayed about ten minutes, Marva having joined them. They went about five blocks to a pool hall, and stayed there about fifteen or twenty minutes, then went about five miles to a place "out in the woods," then back to defendant Bigsby's house. They arrived at approximately 1:00 o'clock a. m., wherein defendant Hatten left with Marva. Gwendolyn spent the remainder of the night with defendant Bigsby, and left at about 9:00 o'clock the following morning. She told her aunt what had happened, but it was not reported to the police for several days. She testified that she was afraid to report it, because the defendants had been coming around her house at all hours of the night.

Officer McMullen testified that on November 17, 1970, he interrogated defendant Hatten, then defendant Bigsby, separately in the county jail after having given each the Miranda warning, which they acknowledged they understood.

Defendant Hatten admitted having sexual intercourse with Miss Rucker, and also acts of oral and anal sodomy. He stated that he did not force Miss Rucker, and that all the acts were committed of her own free will. Defendant Bigsby also admitted committing similar acts with Miss Rucker, but that all the acts were of her own free will.

Officer Johnson testified that he was present when McMullen interrogated the two defendants. Johnson's testimony did not differ substantially from that of McMullen's.

Marvel (Marva) Bean testified for the defense that she was with defendant Hatten, defendant Bigsby, and Gwendolyn that night from about 7:00 o'clock p. m., during which time they rode around various places, and stopped and played pool, and stopped at a grocery store. During this time, Gwendolyn was quite affectionate with defendant Bigsby. She was alone with Gwendolyn at various times, and she never complained of being raped.

Defendant Bigsby testified that he had a date with Gwendolyn the night of the 13th, and that he and defendant Hatten picked her up at her house. They drove around to various places, then went to his house, where he and Gwendolyn had voluntary

sexual relations. They then went to a beer joint, then were joined by Marvel; they went to another beer joint, then another, where the girls played pool while defendant Hatten and defendant Bigsby went to a bar. Defendant Hatten and Marvel eventually left, and Gwendolyn spent the night at his house. He denied having a gun or a knife and denied using any force on Gwendolyn. He denied committing any act of sodomy with her, and denied having made such admission to the officers.

Defendant Hatten testified that he was with defendant Bigsby and Gwendolyn that evening, and after driving around various places, they wound up at defendant Bigsby's house. Defendant Hatten left the other two alone for some twenty minutes, and on returning, saw Gwendolyn in the bed, nude. Defendant Bigsby soon came in the front room, and then defendant Hatten went ino the bedroom and had some sexual intercourse with Gwendolyn voluntarily. He testified that there was no gun or knife. The three then left, picked up Marvel, and drove around, stopping at various places and eventually dropping defendant Bigsby and Gwendolyn off at defendant Bigsby's house. He denied having committed sodomy with Gwendolyn, and denied having so admitted to the officers.

Dr. Sanger testified in rebuttal that on November 17, 1970, he examined Gwendolyn at the University Hospital. He observed two small areas of abrasion or laceration about her rectum, which were possibly a result of some type of penetration.

Officer Johnson reiterated in rebuttal that both defendants in the interrogation admitted the acts of sodomy, but stated that it was all done voluntarily.

■ The first proposition asserts that the trial court erred in not instructing the jury on corroboration. In the early case of Cole v. State, 84 Okl.Cr. 76, 179 P.2d 176, 178, we stated:

"Although there is no corroboration of the prosecuting witness as to the acts committed by the defendant which constitute the abominable crime of sodomy, if this Court follows the rule applied in rape cases, the conviction may be sustained upon the uncorroborated evidence of the prosecuting witness, unless such testimony appears incredible and so unsubstantial as to make it unworthy of belief."

See also Woody v. State, 95 Okl.Cr. 21, 238 P.2d 367. We are of the opinion that the victim's story was not so incredible or unsubstantial as to make it unworthy of belief, thus requiring corroboration. We further observe that the victim's testimony concerning the anal sodomy was corroborated by the doctor. We, therefore, find this proposition to be without merit.

■ The next proposition contends that the trial court erred in permitting the State to introduce rebuttal testimony. In the case of Clark v. State, Okl.Cr., 370 P.2d 46, the Court therein cited Bowman v. State, 82 Okl.Cr. 199, 167 P.2d 663:

"In nearly every case we find evidence introduced as rebuttal which might properly have been introduced in support of the case in chief, but this is not the sole test. *The question which arises is directed to the discretion of the trial court is* whether the evidence offered in rebuttal is a rehash of the State's case in chief, or whether it pertains to some material issue which has become important because of effect of evidence introduced on behalf of defendant." (Emphasis Added.)

In the instant case, the defendants denied committing oral sodomy with the victim, and also denied admitting the same to the police officers. We are of the opinion that it was well within the discretion of the trial court to permit the State to call the two rebuttal witnesses.

■ The final proposition asserts that the punishment is excessive. We have repeatedly held that the question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case, and that the Court of Criminal Appeals does not have the power to modify a sentence, un-

less we can conscientiously say that under all facts and circumstances the sentence is so excessive as to shock the conscience of the Court. Roberts v. State, Okl.Cr., 473 P. 2d 264. From the foregoing statement of facts, we cannot conscientiously say the sentence of five years shocks the conscience of this Court.

In conclusion, we observe the Record is free of any error which would require reversal or justify modification. The judgment and sentence is accordingly affirmed.

BRETT and NIX, JJ., concur.